**KIRSCH GARTENBERG HOWARD, LLP**
Local Counsel for THE JACOB D. FUCHSBERG LAW FIRM, LLP
2 University Plaza # 400
Hackensack, NJ 07601
(201) 488-4644
thoward@kghlaw.com

**THE JACOB D. FUCHSBERG LAW FIRM, LLP**
Attorneys for Plaintiff CORAL PAIGE a/k/a CORAL P. DORF
500 Fifth Avenue, 45th Floor
New York, New York 10110
(212) 869-3500
b.zimmerman@fuchsberg.com

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CORAL PAIGE a/k/a CORAL P. DORF,<br><br>               Plaintiff,<br>   -against-<br><br>RAFFAELE CORBISIERO, M.D., BHAVIN M. PATEL, D.O., REBECCA A. ARMBRUSTER, D.O., RANIA ABOUJAOUDE, M.D.,  CAROL MANTONI, R.N., ELIZABETH WILKINS, R.N., AMY PALMER, R.N., BONNI MACQUEEN, MSN, APN-C, DONNA MENGEL, R.N., ROXANA FRANCO, R.N. a/k/a ROXANA SANTIAGO-FRANCO, R.N., DIANE ROSE, R.N., DEBORAH HEART AND LUNG CENTER,<br><br>               Defendants. | DOCKET NO.:<br><br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff CORAL PAIGE a/k/a CORAL P. DORF, by her attorneys, complaining of the

defendants RAFFAELE CORBISIERO, M.D., BHAVIN M. PATEL, D.O., REBECCA A.

ARMBRUSTER, D.O., RANIA ABOUJAOUDE, M.D., CAROL MANTONI, R.N.,

ELIZABETH WILKINS, R.N., AMY PALMER, R.N., BONNI MACQUEEN, MSN, APN-C,

DONNA MENGEL, R.N., ROXANA FRANCO, R.N. A/K/A ROXANA SANTIAGO-

FRANCO, R.N., DIANE ROSE, R.N., and DEBORAH HEART AND LUNG CENTER, states and alleges the following, upon information and belief:

## JURISDICTION

1.       That the jurisdiction of this Court is premised upon the diversity of citizenship among the parties, as Plaintiff is a citizen of the State of New York and as the Defendants are either citizens of the State of New Jersey or citizens of the Commonwealth of Pennsylvania, with their principal and actual places of business and/or domiciles in New Jersey and/or the Commonwealth of Pennsylvania.

2.       That the matter in controversy exceeds, exclusive of interest and costs, the sum specified by *28 U.S.C. §1332* (*i.e.:* $75,000.00).

## VENUE

3.       That the venue of this action is premised upon the fact that the transactions and occurrences that form the basis of the Plaintiff's Complaint took place in the municipality of Browns Mills, Burlington County, New Jersey.

## PARTIES

4.       That at all times relevant times, the plaintiff CORAL PAIGE a/k/a CORAL P. DORF (hereinafter "CORAL PAIGE") resided at and was domiciled at 61 Fort Salonga Road, Fort Salonga, New York 11768 in the County of Suffolk.

5.       That the plaintiff CORAL PAIGE was and is domiciled in the State of New York.

6.       That at all relevant times, the plaintiff CORAL PAIGE was and is a citizen of the State of New York.

7.       That at all times mentioned herein, defendant RAFFAELE CORBISIERO, M.D. (hereinafter "CORBISIERO"), was and is a citizen of the State of New Jersey, and was and is domiciled in the State of New Jersey.

8.     That at all times mentioned herein, defendant RAFFAELE CORBISIERO was and is domiciled at 6 Wolcott Court, New Jersey 07728, in Monmouth County.

9.     That at all times mentioned herein, defendant CORBISIERO was a physician duly licensed to practice medicine in the State of New Jersey.

10.    That at all times mentioned herein, defendant CORBISIERO was a physician practicing medicine in the State of New Jersey.

11.    That at all times mentioned herein, defendant CORBISIERO was a physician Board Certified in Cardiology.

12.    That at all times mentioned herein, defendant CORBISIERO was a physician Board Certified in Internal Medicine.

13.    That at all times mentioned herein, defendant CORBISIERO was a physician specializing in the field of cardiology and internal medicine who held himself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, including plaintiff CORAL PAIGE in particular, in accordance with standards of accepted cardiology and internal medicine care and treatment.

14.    That at all times mentioned herein, defendant CORBISIERO practiced medicine and rendered medical services, care, and treatment at Deborah Heart and Lung Center, located at 200 Trenton Road, Browns Mills, New Jersey 08015, and at its clinics, medical offices, operating rooms, patient rooms, and treatment locations, and at other locations.

15.    That at all times mentioned herein, defendant CORBISIERO was affiliated with defendant DEBORAH HEART AND LUNG CENTER and was authorized to provide care and treatment to patients at defendant DEBORAH HEART AND LUNG CENTER.

16.     That at all times mentioned herein, defendant CORBISIERO was an employee of defendant DEBORAH HEART AND LUNG CENTER.

17.     That at all times mentioned herein, defendant CORBISIERO was an agent and/or servant of defendant DEBORAH HEART AND LUNG CENTER.

18.     That at all times mentioned herein, defendant CORBISIERO was an independent contractor of defendant DEBORAH HEART AND LUNG CENTER.

19.     That at all times mentioned herein, defendant CORBISIERO was an attending at defendant DEBORAH HEART AND LUNG CENTER.

20.     That at all times mentioned herein, defendant BHAVIN M. PATEL, D.O. (hereinafter "PATEL"), was and is a citizen of the State of New Jersey and was and is domiciled in the State of New Jersey.

21.     That at all times mentioned herein, defendant PATEL was and is a citizen of the Commonwealth of Pennsylvania and was and is domiciled in the Commonwealth of Pennsylvania.

22.     That at all times mentioned herein, defendant PATEL was and is domiciled at 66 Normandy Road, Marlton, New Jersey 08053 in Burlington County.

23.     That at all times mentioned herein, defendant PATEL was and is domiciled at 3948 Conshohocken Avenue, Philadelphia, PA 19131 in Philadelphia County.

24.     That at all times mentioned herein, defendant PATEL was a physician duly licensed to practice medicine in the State of New Jersey.

25.     That at all times mentioned herein, defendant PATEL was a physician practicing medicine in the State of New Jersey.

26.     That at all times mentioned herein, defendant PATEL was a physician Board Certified in Cardiology.

27.     That at all times mentioned herein, defendant PATEL was a physician Board Certified in Internal Medicine.

28.     That at all times mentioned herein, defendant PATEL was a physician specializing in the field of cardiology and internal medicine who held himself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, including plaintiff CORAL PAIGE in particular, in accordance with standards of accepted cardiology and internal medicine care and treatment.

29.     That at all times mentioned herein, defendant PATEL practiced medicine and rendered medical services, care, and treatment at Deborah Heart and Lung Center, located at 200 Trenton Road, Browns Mills, New Jersey 08015, and at its clinics, medical offices, operating rooms, patient rooms, and treatment locations, and at other locations.

30.     That at all times mentioned herein, defendant PATEL was affiliated with defendant DEBORAH HEART AND LUNG CENTER and was authorized to provide care and treatment to patients at defendant DEBORAH HEART AND LUNG CENTER.

31.     That at all times mentioned herein, defendant PATEL was an employee of defendant DEBORAH HEART AND LUNG CENTER.

32.     That at all times mentioned herein, defendant PATEL was an agent and/or servant of defendant DEBORAH HEART AND LUNG CENTER.

33.     That at all times mentioned herein, defendant PATEL was an independent contractor of defendant DEBORAH HEART AND LUNG CENTER.

34.    That at all times mentioned herein, defendant PATEL was an attending at defendant DEBORAH HEART AND LUNG CENTER.

35.    That at all times mentioned herein, defendant PATEL was a resident at defendant DEBORAH HEART AND LUNG CENTER.

36.    That at all times mentioned herein, defendant PATEL was a fellow at defendant DEBORAH HEART AND LUNG CENTER.

37.    That at all times mentioned herein, defendant REBECCA A. ARMBRUSTER, D.O. (hereinafter "ARMBRUSTER"), was and is a citizen of the Commonwealth of Pennsylvania, and was and is domiciled in the Commonwealth of Pennsylvania.

38.    That at all times mentioned herein, defendant ARMBRUSTER was and is a citizen of the State of New Jersey and was and is domiciled in the State of New Jersey.

39.    That at all times mentioned herein, defendant ARMBRUSTER was and is domiciled at 1200 William Penn Drive, Bensalem, PA 19020 in Bucks County.

40.    That at all times mentioned herein, defendant ARMBRUSTER was domiciled in the State of New Jersey.

41.    That at all times mentioned herein, defendant ARMBRUSTER was a physician duly licensed to practice medicine in the State of New Jersey.

42.    That at all times mentioned herein, defendant ARMBRUSTER was a physician practicing medicine in the State of New Jersey.

43.    That at all times mentioned herein, defendant ARMBRUSTER was a physician Board Certified in Cardiology.

44.    That at all times mentioned herein, defendant ARMBRUSTER was a physician Board Certified in Internal Medicine.

45.    That at all times mentioned herein, defendant ARMBRUSTER was a physician specializing in the field of internal medicine and cardiology who held herself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, including plaintiff CORAL PAIGE in particular, in accordance with standards of accepted cardiology and internal medicine care and treatment.

46.    That at all times mentioned herein, defendant ARMBRUSTER practiced medicine and rendered medical services, care, and treatment at Deborah Heart and Lung Center, located at 200 Trenton Road, Browns Mills, New Jersey 08015, and at its clinics, medical offices, operating rooms, patient rooms, and treatment locations, and at other locations.

47.    That at all times mentioned herein, defendant ARMBRUSTER was affiliated with defendant DEBORAH HEART AND LUNG CENTER and was authorized to provide care and treatment to patients at defendant DEBORAH HEART AND LUNG CENTER.

48.    That at all times mentioned herein, defendant ARMBRUSTER was an employee of defendant DEBORAH HEART AND LUNG CENTER.

49.    That at all times mentioned herein, defendant ARMBRUSTER was an agent and/or servant of defendant DEBORAH HEART AND LUNG CENTER.

50.    That at all times mentioned herein, defendant ARMBRUSTER was an independent contractor of defendant DEBORAH HEART AND LUNG CENTER.

51.    That at all times mentioned herein, defendant ARMBRUSTER was an attending at defendant DEBORAH HEART AND LUNG CENTER.

52.    That at all times mentioned herein, defendant ARMBRUSTER was a resident at defendant DEBORAH HEART AND LUNG CENTER.

53.     That at all times mentioned herein, defendant ARMBRUSTER was a fellow at defendant DEBORAH HEART AND LUNG CENTER.

54.     That at all times mentioned herein, defendant RANIA ABOUJAOUDE, M.D. (hereinafter "ABOUJAOUDE"), was and is a citizen of the State of New Jersey and was and is domiciled in the State of New Jersey.

55.     That at all times mentioned herein, defendant ABOUJAOUDE was and is domiciled at 16 Sycamore Lane, Moorestown, New Jersey 08057 in Burlington County.

56.     That at all times mentioned herein, defendant ABOUJAOUDE was a physician duly licensed to practice medicine in the State of New Jersey.

57.     That at all times mentioned herein, defendant ABOUJAOUDE was a physician practicing medicine in the State of New Jersey.

58.     That at all times mentioned herein, defendant ABOUJAOUDE was a physician Board Certified in Internal Medicine.

59.     That at all times mentioned herein, defendant ABOUJAOUDE was a physician Board Certified in Infectious Diseases.

60.     That at all times mentioned herein, defendant ABOUJAOUDE was a physician specializing in the field of internal medicine and infectious diseases who held herself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, including plaintiff CORAL PAIGE in particular, in accordance with standards of accepted infectious diseases and internal medicine care and treatment.

61.     That at all times mentioned herein, defendant ABOUJAOUDE practiced medicine and rendered medical services, care, and treatment at Deborah Heart and Lung Center, located at

200 Trenton Road, Browns Mills, New Jersey 08015, and at its clinics, medical offices, operating rooms, patient rooms, and treatment locations, and at other locations.

62.     That at all times mentioned herein, defendant ABOUJAOUDE was affiliated with defendant DEBORAH HEART AND LUNG CENTER and was authorized to provide care and treatment to patients at defendant DEBORAH HEART AND LUNG CENTER.

63.     That at all times mentioned herein, defendant ABOUJAOUDE was an employee of defendant DEBORAH HEART AND LUNG CENTER.

64.     That at all times mentioned herein, defendant ABOUJAOUDE was an agent and/or servant of defendant DEBORAH HEART AND LUNG CENTER.

65.     That at all times mentioned herein, defendant ABOUJAOUDE was an independent contractor of defendant DEBORAH HEART AND LUNG CENTER.

66.     That at all times mentioned herein, defendant ABOUJAOUDE was an attending at defendant DEBORAH HEART AND LUNG CENTER.

67.     That at all times mentioned herein, defendant ABOUJAOUDE was a resident at defendant DEBORAH HEART AND LUNG CENTER.

68.     That at all times mentioned herein, defendant ABOUJAOUDE was a fellow at defendant DEBORAH HEART AND LUNG CENTER.

69.     That at all times mentioned herein, defendant CAROL MANTONI, R.N., (hereinafter "MANTONI"), was and is a citizen of the State of New Jersey and was and is domiciled in the State of New Jersey.

70.     That at all times mentioned herein, defendant MANTONI was and is domiciled at 13 Shamrock Road, Lumberton, New Jersey 08048 in Burlington County.

71.     That at all times mentioned herein, defendant MANTONI was a registered nurse duly licensed to practice medicine in the State of New Jersey.

72.     That at all times mentioned herein, defendant MANTONI was a nurse practicing medicine in the State of New Jersey.

73.     That at all times mentioned herein, defendant MANTONI was a nurse who held herself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, including plaintiff CORAL PAIGE in particular, in accordance with standards of accepted nursing care and treatment.

74.     That at all times mentioned herein, defendant MANTONI practiced medicine and rendered medical and nursing services, care, and treatment at Deborah Heart and Lung Center, located at 200 Trenton Road, Browns Mills, New Jersey 08015, and at its clinics, medical offices, operating rooms, patient rooms, and treatment locations, and at other locations.

75.     That at all times mentioned herein, defendant MANTONI was affiliated with defendant DEBORAH HEART AND LUNG CENTER and was authorized to provide care and treatment to patients at defendant DEBORAH HEART AND LUNG CENTER.

76.     That at all times mentioned herein, defendant MANTONI was an employee of defendant DEBORAH HEART AND LUNG CENTER.

77.     That at all times mentioned herein, defendant MANTONI was an agent and/or servant of defendant DEBORAH HEART AND LUNG CENTER.

78.     That at all times mentioned herein, defendant MANTONI was an independent contractor of defendant DEBORAH HEART AND LUNG CENTER.

79.     That at all times mentioned herein, defendant ELIZABETH WILKINS, R.N., (hereinafter "WILKINS"), was and is a citizen of the State of New Jersey and was and is domiciled in the State of New Jersey.

80.     That at all times mentioned herein, defendant WILKINS was and is domiciled at 69 Falmouth Road, Yardville, New Jersey 08620 in Mercer County.

81.     That at all times mentioned herein, defendant WILKINS was and is domiciled at 43 Bunting Bridge Road, Cookstown, New Jersey 08511 in Burlington County.

82.     That at all times mentioned herein, defendant WILKINS was a registered nurse duly licensed to practice medicine in the State of New Jersey.

83.     That at all times mentioned herein, defendant WILKINS was a nurse practicing medicine in the State of New Jersey.

84.     That at all times mentioned herein, defendant WILKINS was a nurse who held herself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, including plaintiff CORAL PAIGE in particular, in accordance with standards of accepted nursing care and treatment.

85.     That at all times mentioned herein, defendant WILKINS practiced medicine and rendered medical and nursing services, care, and treatment at Deborah Heart and Lung Center, located at 200 Trenton Road, Browns Mills, New Jersey 08015, and at its clinics, medical offices, operating rooms, patient rooms, and treatment locations, and at other locations.

86.     That at all times mentioned herein, defendant WILKINS was affiliated with defendant DEBORAH HEART AND LUNG CENTER and was authorized to provide care and treatment to patients at defendant DEBORAH HEART AND LUNG CENTER.

87.     That at all times mentioned herein, defendant WILKINS was an employee of defendant DEBORAH HEART AND LUNG CENTER.

88.     That at all times mentioned herein, defendant WILKINS was an agent and/or servant of defendant DEBORAH HEART AND LUNG CENTER.

89.     That at all times mentioned herein, defendant WILKINS was an independent contractor of defendant DEBORAH HEART AND LUNG CENTER.

90.     That at all times mentioned herein, defendant AMY PALMER, R.N., (hereinafter "PALMER"), was and is a citizen of the State of New Jersey and was and is domiciled in the State of New Jersey.

91.     That at all times mentioned herein, defendant PALMER was and is domiciled at 4 Third Street, Pemberton, New Jersey 08068 in Burlington County.

92.     That at all times mentioned herein, defendant PALMER was and is domiciled at 414 Lewistown Road, Juliustown, New Jersey 08042 in Burlington County.

93.     That at all times mentioned herein, defendant PALMER was a registered nurse duly licensed to practice medicine in the State of New Jersey.

94.     That at all times mentioned herein, defendant PALMER was a nurse practicing medicine in the State of New Jersey.

95.     That at all times mentioned herein, defendant PALMER was a nurse who held herself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, including plaintiff CORAL PAIGE in particular, in accordance with standards of accepted nursing care and treatment.

96.     That at all times mentioned herein, defendant PALMER practiced medicine and rendered medical and nursing services, care, and treatment at Deborah Heart and Lung Center,

located at 200 Trenton Road, Browns Mills, New Jersey 08015, and at its clinics, medical offices, operating rooms, patient rooms, and treatment locations, and at other locations.

97.     That at all times mentioned herein, defendant PALMER was affiliated with defendant DEBORAH HEART AND LUNG CENTER and was authorized to provide care and treatment to patients at defendant DEBORAH HEART AND LUNG CENTER.

98.     That at all times mentioned herein, defendant PALMER was an employee of defendant DEBORAH HEART AND LUNG CENTER.

99.     That at all times mentioned herein, defendant PALMER was an agent and/or servant of defendant DEBORAH HEART AND LUNG CENTER.

100.    That at all times mentioned herein, defendant PALMER was an independent contractor of defendant DEBORAH HEART AND LUNG CENTER.

101.    That at all times mentioned herein, defendant BONNI MACQUEEN, MSN, APN-C (hereinafter "MACQUEEN"), was and is a citizen of the State of New Jersey and was and is domiciled in the State of New Jersey.

102.    That at all times mentioned herein, defendant MACQUEEN was and is domiciled at 650 Tabernacle Road, Medford, NJ 08055 in Burlington County.

103.    That at all times mentioned herein, defendant MACQUEEN was and is domiciled at 714 Eldridge Avenue, Oaklyn, New Jersey 08107 in Camden County.

104.    That at all times mentioned herein, defendant MACQUEEN was a registered nurse duly licensed to practice medicine in the State of New Jersey.

105.    That at all times mentioned herein, defendant MACQUEEN was a nurse practicing medicine in the State of New Jersey.

106.     That at all times mentioned herein, defendant MACQUEEN was a nurse who held herself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, including plaintiff CORAL PAIGE in particular, in accordance with standards of accepted nursing care and treatment.

107.     That at all times mentioned herein, defendant MACQUEEN practiced medicine and rendered medical and nursing services, care, and treatment at Deborah Heart and Lung Center, located at 200 Trenton Road, Browns Mills, New Jersey 08015, and at its clinics, medical offices, operating rooms, patient rooms, and treatment locations, and at other locations.

108.     That at all times mentioned herein, defendant MACQUEEN was affiliated with defendant DEBORAH HEART AND LUNG CENTER and was authorized to provide care and treatment to patients at defendant DEBORAH HEART AND LUNG CENTER.

109.     That at all times mentioned herein, defendant MACQUEEN was an employee of defendant DEBORAH HEART AND LUNG CENTER.

110.     That at all times mentioned herein, defendant MACQUEEN was an agent and/or servant of defendant DEBORAH HEART AND LUNG CENTER.

111.     That at all times mentioned herein, defendant MACQUEEN was an independent contractor of defendant DEBORAH HEART AND LUNG CENTER.

112.     That at all times mentioned herein, defendant DONNA MENGEL, R.N., (hereinafter "MENGEL"), was and is a citizen of the State of New Jersey and was and is domiciled in the State of New Jersey.

113.     That at all times mentioned herein, defendant MENGEL was and is domiciled at 10 West Raymond Avenue, Medford, New Jersey 08055 in Burlington County.

114.   That at all times mentioned herein, defendant MENGEL was a registered nurse duly licensed to practice medicine in the State of New Jersey.

115.   That at all times mentioned herein, defendant MENGEL was a nurse practicing medicine in the State of New Jersey.

116.   That at all times mentioned herein, defendant MENGEL was a nurse who held herself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, including plaintiff CORAL PAIGE in particular, in accordance with standards of accepted nursing care and treatment.

117.   That at all times mentioned herein, defendant MENGEL practiced medicine and rendered medical and nursing services, care, and treatment at Deborah Heart and Lung Center, located at 200 Trenton Road, Browns Mills, New Jersey 08015, and at its clinics, medical offices, operating rooms, patient rooms, and treatment locations, and at other locations.

118.   That at all times mentioned herein, defendant MENGEL was affiliated with defendant DEBORAH HEART AND LUNG CENTER and was authorized to provide care and treatment to patients at defendant DEBORAH HEART AND LUNG CENTER.

119.   That at all times mentioned herein, defendant MENGEL was an employee of defendant DEBORAH HEART AND LUNG CENTER.

120.   That at all times mentioned herein, defendant MENGEL was an agent and/or servant of defendant DEBORAH HEART AND LUNG CENTER.

121.   That at all times mentioned herein, defendant MENGEL was an independent contractor of defendant DEBORAH HEART AND LUNG CENTER.

122.     That at all times mentioned herein, defendant ROXANA FRANCO, R.N. A/K/A ROXANA SANTIAGO-FRANCO, R.N., (hereinafter "FRANCO"), was and is a citizen of the State of New Jersey and was and is domiciled in New Jersey.

123.     That at all times mentioned herein, defendant FRANCO was domiciled at 2 Split Rail Court, Hainesport, New Jersey 08036 in Burlington County.

124.     That at all times mentioned herein, defendant FRANCO was a registered nurse duly licensed to practice medicine in the State of New Jersey.

125.     That at all times mentioned herein, defendant FRANCO was a nurse practicing medicine in the State of New Jersey.

126.     That at all times mentioned herein, defendant FRANCO was a nurse who held herself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, including plaintiff CORAL PAIGE in particular, in accordance with standards of accepted nursing care and treatment.

127.     That at all times mentioned herein, defendant FRANCO practiced medicine and rendered medical and nursing services, care, and treatment at Deborah Heart and Lung Center, located at 200 Trenton Road, Browns Mills, New Jersey 08015, and at its clinics, medical offices, operating rooms, patient rooms, and treatment locations, and at other locations.

128.     That at all times mentioned herein, defendant FRANCO was affiliated with defendant DEBORAH HEART AND LUNG CENTER and was authorized to provide care and treatment to patients at defendant DEBORAH HEART AND LUNG CENTER.

129.     That at all times mentioned herein, defendant FRANCO was an employee of defendant DEBORAH HEART AND LUNG CENTER.

130.    That at all times mentioned herein, defendant FRANCO was an agent and/or servant of defendant DEBORAH HEART AND LUNG CENTER.

131.    That at all times mentioned herein, defendant FRANCO was an independent contractor of defendant DEBORAH HEART AND LUNG CENTER.

132.    That at all times mentioned herein, defendant DIANE ROSE, R.N. (hereinafter "ROSE"), was and is a citizen of the State of New Jersey and was and is domiciled in New Jersey.

133.    That at all times mentioned herein, defendant ROSE was domiciled at 410 Provence Drive, Cherry Hill, New Jersey 08003 in Camden County.

134.    That at all times mentioned herein, defendant ROSE was a registered nurse duly licensed to practice medicine in the State of New Jersey.

135.    That at all times mentioned herein, defendant ROSE was a nurse practicing medicine in the State of New Jersey.

136.    That at all times mentioned herein, defendant ROSE was a nurse who held herself out to the general public as being competent in the diagnosis, care and treatment of patients, and as being able to treat patients in general, including plaintiff CORAL PAIGE in particular, in accordance with standards of accepted nursing care and treatment.

137.    That at all times mentioned herein, defendant ROSE practiced medicine and rendered medical and nursing services, care, and treatment at Deborah Heart and Lung Center, located at 200 Trenton Road, Browns Mills, New Jersey 08015, and at its clinics, medical offices, operating rooms, patient rooms, and treatment locations, and at other locations.

138.    That at all times mentioned herein, defendant ROSE was affiliated with defendant DEBORAH HEART AND LUNG CENTER and was authorized to provide care and treatment to patients at defendant DEBORAH HEART AND LUNG CENTER.

139.    That at all times mentioned herein, defendant ROSE was an employee of defendant DEBORAH HEART AND LUNG CENTER.

140.    That at all times mentioned herein, defendant ROSE was an agent and/or servant of defendant DEBORAH HEART AND LUNG CENTER.

141.    That at all times mentioned herein, defendant DEBORAH HEART AND LUNG CENTER was and is a citizen of the State of New Jersey, having its principal and sole place of business at 200 Trenton Road, Browns Mills, New Jersey 08015 in Burlington County.

142.    That at all times mentioned herein, defendant DEBORAH HEART AND LUNG CENTER was a corporation with business activities and operations, including a health care center and hospital, located in the State of New Jersey.

143.    That at all times hereinafter mentioned, defendant DEBORAH HEART AND LUNG CENTER was and is a domestic corporation, limited liability company, limited partnership, or other jural entity organized under and existing by virtue of the laws of the State of New Jersey, and was and is doing business in the State of New Jersey.

144.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER was and is a domestic profit corporation organized under and existing by virtue of the laws of the State of New Jersey, and was and is doing business in the State of New Jersey.

145.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER was and is a domestic not-for-profit corporation organized under and existing by virtue of the laws of the State of New Jersey, and was and is doing business in the State of New Jersey.

146.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER operated, controlled, and maintained hospitals, healthcare facilities, medical facilities, medical offices, health centers, and/or clinics, pursuant to the laws of the State of New Jersey, for the care of patients, including plaintiff CORAL PAIGE, which provided personnel, including, doctors, cardiologists, infectious disease doctors, nurse practitioners, nurses, residents, interns, fellows, physicians' assistants, attendings, and others for the care and treatment of patients, and was made available to and held out to the public as furnishing hospitals, healthcare facilities, medical facilities, medical offices, health centers, and/or clinics where patients, including Plaintiff CORAL PAIGE, could be examined and treated for various ailments or medical conditions.

147.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER operated, controlled, and maintained a healthcare facility, medical facility, health center, medical office, clinic, and hospital known as Deborah Heart and Lung Center, located at 200 Trenton Road, Browns Mills, New Jersey 08015, where patients, including plaintiff CORAL PAIGE, could receive care and treatment, and be examined and treated for various ailments or medical conditions, including, but not limited to, cardiac conditions.

148.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant DEBORAH HEART AND LUNG CENTER liable for the acts and/or omissions of defendant CORBISIERO.

149.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER and defendant PATEL stood in such a relationship with each other in their care and treatment of

plaintiff CORAL PAIGE, so as to make defendant DEBORAH HEART AND LUNG CENTER liable for the acts and/or omissions of defendant PATEL.

150.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER and defendant ARMBRUSTER stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant DEBORAH HEART AND LUNG CENTER liable for the acts and/or omissions of defendant ARMBRUSTER.

151.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER and defendant ABOUJAOUDE stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant DEBORAH HEART AND LUNG CENTER liable for the acts and/or omissions of defendant ABOUJAOUDE.

152.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER and defendant MANTONI stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant DEBORAH HEART AND LUNG CENTER liable for the acts and/or omissions of defendant MANTONI.

153.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER and defendant WILKINS stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant DEBORAH HEART AND LUNG CENTER liable for the acts and/or omissions of defendant WILKINS.

154.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER and defendant PALMER stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant DEBORAH HEART AND LUNG CENTER liable for the acts and/or omissions of defendant PALMER.

155.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER and defendant MACQUEEN stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant DEBORAH HEART AND LUNG CENTER liable for the acts and/or omissions of defendant MACQUEEN.

156.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER and defendant MENGEL stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant DEBORAH HEART AND LUNG CENTER liable for the acts and/or omissions of defendant MENGEL.

157.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER and defendant FRANCO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant DEBORAH HEART AND LUNG CENTER liable for the acts and/or omissions of defendant FRANCO.

158.    That at all pertinent times, defendant DEBORAH HEART AND LUNG CENTER and defendant ROSE stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant DEBORAH HEART AND LUNG CENTER liable for the acts and/or omissions of defendant ROSE

159.    That at all pertinent times, defendant PATEL and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant CORBISIERO liable for the acts and/or omissions of defendant PATEL.

160.    That at all pertinent times, defendant PATEL and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant PATEL liable for the acts and/or omissions of defendant CORBISIERO.

161.    That at all pertinent times, defendant ARMBRUSTER and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant CORBISIERO liable for the acts and/or omissions of defendant ARMBRUSTER.

162.    That at all pertinent times, defendant ARMBRUSTER and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant ARMRBRUSTER liable for the acts and/or omissions of defendant CORBISIERO.

163.    That at all pertinent times, defendant ABOUJAOUDE and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff\ CORAL PAIGE, so as to make defendant CORBISIERO liable for the acts and/or omissions of defendant ABOUJAOUDE.

164.    That at all pertinent times, defendant ABOUJAOUDE and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant ABOUJAOUDE liable for the acts and/or omissions of defendant CORBISIERO.

165.    That at all pertinent times, defendant MANTONI and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant CORBISIERO liable for the acts and/or omissions of defendant MANTONI.

166.    That at all pertinent times, defendant MANTONI and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL

PAIGE, so as to make defendant MANTONI liable for the acts and/or omissions of defendant CORBISIERO.

167.   That at all pertinent times, defendant WILKINS and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant CORBISIERO liable for the acts and/or omissions of defendant WILKINS.

168.   That at all pertinent times, defendant WILKINS and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant WILKINS liable for the acts and/or omissions of defendant CORBISIERO.

169.   That at all pertinent times, defendant PALMER and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant CORBISIERO liable for the acts and/or omissions of defendant PALMER.

170.   That at all pertinent times, defendant PALMER and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant PALMER liable for the acts and/or omissions of defendant CORBISIERO.

171.   That at all pertinent times, defendant MACQUEEN and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant CORBISIERO liable for the acts and/or omissions of defendant MACQUEEN.

172.    That at all pertinent times, defendant MACQUEEN and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant MACQUEEN liable for the acts and/or omissions of defendant CORBISIERO.

173.    That at all pertinent times, defendant MENGEL and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant CORBISIERO liable for the acts and/or omissions of defendant MENGEL.

174.    That at all pertinent times, defendant MENGEL and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant MENGEL liable for the acts and/or omissions of defendant CORBISIERO.

175.    That at all pertinent times, defendant FRANCO and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant CORBISIERO liable for the acts and/or omissions of defendant FRANCO.

176.    That at all pertinent times, defendant FRANCO and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant FRANCO liable for the acts and/or omissions of defendant CORBISIERO.

177.    That at all pertinent times, defendant ROSE and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant CORBISIERO liable for the acts and/or omissions of defendant ROSE.

178.    That at all pertinent times, defendant ROSE and defendant CORBISIERO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make defendant ROSE liable for the acts and/or omissions of defendant CORBISIERO.

179.    That at all pertinent times, defendant PATEL and defendant ARMBRUSTER stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

180.    That at all pertinent times, defendant PATEL and defendant ABOUJAOUDE stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

181.    That at all pertinent times, defendant PATEL and defendant MANTONI stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

182.    That at all pertinent times, defendant PATEL and defendant WILKINS stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

183.    That at all pertinent times, defendant PATEL and defendant PALMER stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

184.    That at all pertinent times, defendant PATEL and defendant MACQUEEN stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

185.   That at all pertinent times, defendant PATEL and defendant MENGEL stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

186.   That at all pertinent times, defendant PATEL and defendant FRANCO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

187.   That at all pertinent times, defendant PATEL and defendant ROSE stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

188.   That at all pertinent times, defendant ARMBRUSTER and defendant ABOUJAOUDE stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

189.   That at all pertinent times, defendant ARMBRUSTER and defendant MANTONI stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

190.   That at all pertinent times, defendant ARMBRUSTER and defendant WILKINS stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

191.   That at all pertinent times, defendant ARMBRUSTER and defendant PALMER stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

192.    That at all pertinent times, defendant ARMBRUSTER and defendant MACQUEEN stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

193.    That at all pertinent times, defendant ARMBRUSTER and defendant MENGEL stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

194.    That at all pertinent times, defendant ARMBRUSTER and defendant FRANCO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

195.    That at all pertinent times, defendant ARMBRUSTER and defendant ROSE stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

196.    That at all pertinent times, defendant ABOUJAOUDE and defendant MANTONI stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

197.    That at all pertinent times, defendant ABOUJAOUDE and defendant WILKINS stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

198.    That at all pertinent times, defendant ABOUJAOUDE and defendant PALMER stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

199.     That at all pertinent times, defendant ABOUJAOUDE and defendant MACQUEEN stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

200.     That at all pertinent times, defendant ABOUJAOUDE and defendant MENGEL stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

201.     That at all pertinent times, defendant ABOUJAOUDE and defendant FRANCO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

202.     That at all pertinent times, defendant ROSE and defendant MACQUEEN stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

203.     That at all pertinent times, defendant MANTONI and defendant WILKINS stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

204.     That at all pertinent times, defendant MANTONI and defendant PALMER stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

205.     That at all pertinent times, defendant MANTONI and defendant MACQUEEN stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

206.    That at all pertinent times, defendant MANTONI and defendant MENGEL stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

207.    That at all pertinent times, defendant MANTONI and defendant FRANCO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

208.    That at all pertinent times, defendant MANTONI and defendant ROSE stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

209.    That at all pertinent times, defendant WILKINS and defendant PALMER stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

210.    That at all pertinent times, defendant WILKINS and defendant MACQUEEN stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

211.    That at all pertinent times, defendant WILKINS and defendant MENGEL stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

212.    That at all pertinent times, defendant WILKINS and defendant FRANCO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

213.    That at all pertinent times, defendant PALMER and defendant MACQUEEN stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

214.    That at all pertinent times, defendant PALMER and defendant MENGEL stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

215.    That at all pertinent times, defendant PALMER and defendant FRANCO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

216.    That at all pertinent times, defendant PALMER and defendant ROSE stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

217.    That at all pertinent times, defendant MACQUEEN and defendant MENGEL stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

218.    That at all pertinent times, defendant MACQUEEN and defendant FRANCO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

219.    That at all pertinent times, defendant MACQUEEN and defendant ROSE stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

220.    That at all pertinent times, defendant MENGEL and defendant FRANCO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

221.    That at all pertinent times, defendant MENGEL and defendant ROSE stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

222.    That at all pertinent times, defendant ROSE and defendant FRANCO stood in such a relationship with each other in their care and treatment of plaintiff CORAL PAIGE, so as to make each liable for the acts and/or omissions of the other.

## AS AND FOR THE FIRST COUNT OF
## NEGLIGENCE AND MEDICAL
## MALPRACTICE

223.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 222 inclusive with the same force and effect as though fully stated and set forth at length herein.

224.    That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant CORBISIERO from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

225.    That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant PATEL from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

226.    That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant ARMBRUSTER from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

227.    That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant ABOUJAOUDE from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

228.    That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant MANTONI from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

229.    That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant WILKINS from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

230.    That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant PALMER from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

231.    That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant MACQUEEN from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

232.    That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant MENGEL from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

233.    That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant FRANCO from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

234.     That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant ROSE from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

235.     That at all pertinent times, plaintiff CORAL PAIGE was a patient of defendant DEBORAH HEART AND LUNG CENTER from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto.

236.     That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the defendant CORBISIERO, and/or his employees, agents, servants, and/or contractors, for medical complaints, testing, examination, and medical care and treatment.

237.     That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her physical condition, plaintiff CORAL PAIGE came under the care of defendant CORBISIERO, and/or his employees, agents, servants, and/or contractors, in his capacity as a physician charged with the responsibility of caring for patients in accordance with standards of accepted medical and cardiology care and treatment.

238.     That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant CORBISIERO, and/or his agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care, treatment, and skill utilized by physicians, and other medical personnel in examining, diagnosing, and treating plaintiff CORAL PAIGE, and had and undertook a duty to render medical, cardiology, and hospital care and treatment in

accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, to employ in the treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, cardiology, and hospital care.

239.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant CORBISIERO, and/or his agents, servants, employees, and/or contractors, rendered continuous medical, diagnostic, consulting, cardiology, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

240.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the defendant PATEL, and/or his employees, agents, servants, and/or contractors, for medical complaints, testing, examination, and medical care and treatment.

241.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her physical condition, plaintiff CORAL PAIGE came under the care of defendant PATEL, and/or his employees, agents, servants, and/or contractors, in his capacity as a physician charged with the responsibility of caring for patients in accordance with standards of accepted medical and cardiology care and treatment.

242.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant PATEL, and/or his agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and

skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care, treatment, and skill utilized by physicians, and other medical personnel in examining, diagnosing, and treating plaintiff CORAL PAIGE, and had and undertook a duty to render medical, cardiology, and hospital care and treatment in accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, to employ in the treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, cardiology, and hospital care.

243.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant PATEL, and/or his agents, servants, employees, and/or contractors, rendered continuous medical, diagnostic, consulting, cardiology, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

244.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the defendant ARMBRUSTER, and/or her employees, agents, servants, and/or contractors, for medical complaints, testing, examination, and medical care and treatment.

245.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her physical condition, plaintiff CORAL PAIGE came under the care of defendant ARMBRUSTER, and/or her employees, agents, servants, and/or contractors, in his capacity as a physician charged

with the responsibility of caring for patients in accordance with standards of accepted medical and cardiology care and treatment.

246.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant ARMBRUSTER, and/or her agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care, treatment, and skill utilized by physicians, and other medical personnel in examining, diagnosing, and treating plaintiff CORAL PAIGE, and had and undertook a duty to render medical, cardiology, and hospital care and treatment in accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, to employ in the treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, cardiology, and hospital care.

247.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant ARMBRUSTER, and/or her agents, servants, employees, and/or contractors, rendered continuous medical, diagnostic, consulting, cardiology, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

248.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the defendant ABOUJAOUDE, and/or her employees, agents, servants, and/or contractors, for medical complaints, testing, examination, and medical care and treatment.

249.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her physical condition, plaintiff CORAL PAIGE came under the care of defendant ABOUJAOUDE, and/or her employees, agents, servants, and/or contractors, in his capacity as a physician charged with the responsibility of caring for patients in accordance with standards of accepted medical and infectious diseases care and treatment.

250.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant ABOUJAOUDE, and/or her agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care, treatment, and skill utilized by physicians, and other medical personnel in examining, diagnosing, and treating plaintiff CORAL PAIGE, and had and undertook a duty to render medical, cardiology, and hospital care and treatment in accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, to employ in the treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, infectious diseases, and hospital care.

251.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant ABOUJAOUDE, and/or her agents, servants, employees, and/or contractors, rendered continuous medical, diagnostic, consulting, infectious diseases, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

252.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the defendant MANTONI, and/or her employees, agents, servants, and/or contractors, s for medical complaints, testing, examination, and medical and nursing care and treatment.

253.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her physical condition, plaintiff CORAL PAIGE came under the care of defendant MANTONI, and/or her employees, agents, servants, and/or contractors, in her capacity as a nurse charged with the responsibility of caring for patients in accordance with standards of accepted medical and nursing care and treatment.

254.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant MANTONI, and/or her agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care, treatment, and skill utilized by nurses, and other medical personnel in examining, diagnosing, and treating plaintiff CORAL PAIGE, and had and undertook a duty to render medical, nursing, and hospital care and treatment in accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, to employ in the treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, nursing, and hospital care.

255.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant MANTONI, and/or her agents, servants, employees, and/or contractors, rendered continuous medical, diagnostic, consulting, nursing, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

256.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the defendant WILKINS, and/or her employees, agents, servants, and/or contractors, for medical complaints, testing, examination, and medical and nursing care and treatment.

257.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her physical condition, plaintiff CORAL PAIGE came under the care of defendant WILKINS, and/or her employees, agents, servants, and/or contractors, in her capacity as a nurse charged with the responsibility of caring for patients in accordance with standards of accepted medical and nursing care and treatment.

258.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant WILKINS, and/or her agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care, treatment, and skill utilized by nurses, and other medical personnel in examining, diagnosing, and treating plaintiff CORAL PAIGE, and had and undertook a duty to render medical, nursing, and hospital care and treatment in accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, to employ in the

treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, nursing, and hospital care.

259.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant WILKINS, and/or her agents, servants, employees, and/or contractors, rendered continuous medical, diagnostic, consulting, nursing, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

260.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the defendant PALMER, and/or her employees, agents, servants, and/or contractors, for medical complaints, testing, examination, and medical and nursing care and treatment.

261.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her physical condition, plaintiff CORAL PAIGE came under the care of defendant PALMER, and/or her employees, agents, servants, and/or contractors, in her capacity as a nurse charged with the responsibility of caring for patients in accordance with standards of accepted medical and nursing care and treatment.

262.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant PALMER, and/or her agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care, treatment, and skill utilized by nurses, and other

medical personnel in examining, diagnosing, and treating plaintiff CORAL PAIGE, and had and undertook a duty to render medical, nursing, and hospital care and treatment in accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, to employ in the treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, nursing, and hospital care.

263.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant PALMER, and/or her agents, servants, employees, and/or contractors, rendered continuous medical, diagnostic, consulting, nursing, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

264.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the defendant MACQUEEN, and/or her employees, agents, servants, and/or contractors, for medical complaints, testing, examination, and medical and nursing care and treatment.

265.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her physical condition, plaintiff CORAL PAIGE came under the care of defendant MACQUEEN, and/or her employees, agents, servants, and/or contractors, in her capacity as a nurse charged with the responsibility of caring for patients in accordance with standards of accepted medical and nursing care and treatment.

266.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant MACQUEEN, and/or her agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care, treatment, and skill utilized by nurses, and other medical personnel in examining, diagnosing, and treating plaintiff CORAL PAIGE, and had and undertook a duty to render medical, nursing, and hospital care and treatment in accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, and to employ in the treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, nursing, and hospital care.

267.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant MACQUEEN, and/or her agents, servants, employees, and/or contractors, rendered continuous medical, diagnostic, consulting, nursing, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

268.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the defendant MENGEL, and/or her employees, agents, servants, and/or contractors, for medical complaints, testing, examination, and medical and nursing care and treatment.

269.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her

physical condition, plaintiff CORAL PAIGE came under the care of defendant MENGEL, and/or her employees, agents, servants, and/or contractors, in her capacity as a nurse charged with the responsibility of caring for patients in accordance with standards of accepted medical and nursing care and treatment.

270.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant MENGEL, and/or her agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care, treatment, and skill utilized by nurses, and other medical personnel in examining, diagnosing, and treating plaintiff CORAL PAIGE and had and undertook a duty to render medical, nursing, and hospital care and treatment in accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, to employ in the treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, nursing, and hospital care.

271.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant MENGEL, and/or her agents, servants, employees, and/or contractors, rendered continuous medical, diagnostic, consulting, nursing, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

272.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the

defendant FRANCO, and/or her employees, agents, servants, and/or contractors, for medical complaints, testing, examination, and medical and nursing care and treatment.

273.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her physical condition, plaintiff CORAL PAIGE came under the care of defendant FRANCO, and/or her employees, agents, servants, and/or contractors, in her capacity as a nurse charged with the responsibility of caring for patients in accordance with standards of accepted medical and nursing care and treatment.

274.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant FRANCO, and/or her agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care, treatment, and skill utilized by nurses, and other medical personnel in examining, diagnosing, and treating plaintiff CORAL PAIGE, and had and undertook a duty to render medical, nursing, and hospital care and treatment in accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, to employ in the treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, nursing, and hospital care.

275.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant FRANCO, and/or her agents, servants, employees, and/or

contractors, rendered continuous medical, diagnostic, consulting, nursing, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

276.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the defendant ROSE, and/or her employees, agents, servants, and/or contractors, s for medical complaints, testing, examination, and medical and nursing care and treatment.

277.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her physical condition, plaintiff CORAL PAIGE came under the care of defendant ROSE, and/or her employees, agents, servants, and/or contractors, in her capacity as a nurse charged with the responsibility of caring for patients in accordance with standards of accepted medical and nursing care and treatment.

278.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant ROSE, and/or her agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care, treatment, and skill utilized by nurses, and other medical personnel in examining, diagnosing, and treating plaintiff CORAL PAIGE, and had and undertook a duty to render medical, nursing, and hospital care and treatment in accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, to employ in the treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to

CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, nursing, and hospital care.

279.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant ROSE, and/or her agents, servants, employees, and/or contractors, rendered continuous medical, diagnostic, consulting, nursing, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

280.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, plaintiff CORAL PAIGE sought the continuous care and treatment of the defendant DEBORAH HEART AND LUNG CENTER, and/or its employees, agents, servants, and/or contractors, for medical complaints, testing, examination, and medical and nursing care and treatment.

281.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, with regard to certain signs, symptoms and conditions relating to her physical condition, plaintiff CORAL PAIGE came under the care of defendant DEBORAH HEART AND LUNG CENTER, and/or its employees, agents, servants, and/or contractors, in its capacity as a hospital that offered care and treatment to patients from the general public, and to DEBORAH HEART AND LUNG CENTER in particular, in accordance with accepted standards of medical, cardiology, infectious disease, nursing, and hospital practice.

282.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant DEBORAH HEART AND LUNG CENTER, and/or its agents, servants, employees, and/or contractors, had and undertook a duty to possess and exercise the degree of reasonable care and skill in the care and treatment of plaintiff CORAL PAIGE, which was in accordance with the generally accepted medical standards of care,

treatment, and skill utilized by physicians, residents, interns, physicians' assistants, nurses and other hospital personnel in the community, in examining, diagnosing, and treating plaintiff CORAL PAIGE, and had and undertook a duty to render medical, cardiology, nursing, and hospital care and treatment in accordance with standards of good and accepted care and treatment and to use reasonable care, diligence and judgment in the exercise of such skill and in the application of such learning, to employ in the treatment of patients in general, and of CORAL PAIGE in particular, approved methods of care and treatment in general use in the community, and to afford to patients in general, and to CORAL PAIGE in particular, due, reasonable and proper skill, diagnosis and treatment, as well as proper medical, cardiology, infectious disease, nursing, and hospital care.

283.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant DEBORAH HEART AND LUNG CENTER, and/or its agents, servants, employees, and/or contractors, rendered continuous medical, diagnostic, consulting, cardiology, infectious disease, nursing, surgical, and other medical care, treatment and services to the plaintiff CORAL PAIGE.

284.    That on or about August 13, 2012, plaintiff CORAL PAIGE discovered that there was a foreign object and/or gauze pad left within her.

285.    That the medical, diagnostic, consulting, cardiology, surgical, nursing, and other medical care and treatment and services provided by the defendants CORBISIERO, PATEL, ARMBRUSTER, ABOUJAOUDE, MANTONI, WILKINS, PALMER, MACQUEEN, MENGEL, FRANCO, ROSE, DEBORAH HEART AND LUNG CENTER, were rendered carelessly, recklessly, unskillfully, negligently, and not in accordance with good and accepted standards of medical and nursing care and treatment in the community.

286.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant CORBISIERO, and/or his agents, servants, employees, and/or contractors, and through those he supervised, directed, and ordered, were negligent, breached their duty, negligently and carelessly failed to exercise the degree of care and skill required of them, departed from accepted standards of care and treatment, and committed medical malpractice in the care and treatment of plaintiff CORAL PAIGE in numerous ways, including, that they, among other things: failed to timely provide appropriate medical, surgical, and cardiology care and treatment to plaintiff CORAL PAIGE; negligently left a foreign object within CORAL PAIGE; negligently left a piece of gauze in CORAL PAIGE; failed to timely and properly perform, conduct, recommend, and order a count of instruments, equipment, surgical items, gauze pads, and other items during CORAL PAIGE's surgeries to ensure that no foreign objects, including, but not limited to, gauze pads were left behind in CORAL PAIGE; negligently caused and allowed CORAL PAIGE to develop infections; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; failed to timely and properly diagnose, discover, and recognize the foreign objects in CORAL PAIGE; failed to timely and properly take into account, act on, remove, and treat the foreign objects in CORAL PAIGE; failed to timely and properly discover, diagnose, recognize, take into account, act on, remove, and treat the foreign objects in CORAL PAIGE prior to completing CORAL PAIGE's surgeries and sending her to the PACU, SICU, and/or recovery room; failed to timely and properly perform, conduct, recommend, and order proper surgical counts of instruments, equipment, surgical items, gauze pads, and other items used during CORAL PAIGE's surgeries; failed to timely and properly order, perform, conduct, recommend, and/or refer CORAL PAIGE for appropriate imaging tests; failed to timely and properly order, perform, conduct, recommend,

and/or refer appropriate MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and/or other appropriate diagnostic and imaging tests; failed to timely and properly use, take into account, and act on the results of CORAL PAIGE's MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and other imaging and diagnostic tests; failed to timely and properly order, perform, conduct, recommend, obtain, and/or refer appropriate consultations; failed to timely and properly order, perform, conduct, recommend, obtain, and/or refer appropriate consultations from qualified surgeons, cardiothoracic surgeons, infectious disease doctors, cardiologists, plastic surgeons, and/or other experts and specialists; failed to timely and properly order, perform, conduct, prescribe, recommend, and/or refer appropriate antibiotics; failed to timely and properly order, perform, conduct, prescribe, recommend, and/or refer appropriate medications; failed to timely and properly debride CORAL PAIGE's scar tissue; failed to timely and properly diagnose, discover, and recognize CORAL PAIGE's infections; failed to timely and properly take into account, act on, and treat CORAL PAIGE's infections; failed to timely and properly recognize, diagnose, take into account, act on, repair, remediate, and treat CORAL PAIGE's surgical wounds; failed to timely and properly close CORAL PAIGE's surgical wounds; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate laboratory tests and diagnostic tests; failed to timely and properly recognize, take into account, and act on CORAL PAIGE's laboratory tests and diagnostic tests; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly recognize, take into account, and act on CORAL PAIGE's blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly diagnose, recognize, take into account, treat, and act on the occlusions in CORAL PAIGE heart and blood vessels; failed to timely and properly

49

perform surgery on CORAL PAIGE; negligently made unnecessary incisions and performed unnecessary and contraindicated procedures; negligently and improperly performed revision surgeries; negligently and improperly performed a pocket revision surgery; negligently and improperly implanted, revised, and re-implanted CORAL PAIGE's pacemakers; negligently and improperly performed pacemaker surgeries on CORAL PAIGE; failed to timely and properly perform, order, recommend, and/or prescribe proper scans to assess CORAL PAIGE's anatomical structure; failed to perform surgeries on CORAL PAIGE within the accepted standards of care; failed to perform the surgeries on CORAL PAIGE carefully and skillfully; failed to properly supervise CORAL PAIGE's surgeries, including failing to properly supervise the nurses, residents, fellows, assistants, and other surgical personnel, including, with regards to checks and counts of equipment, surgical items, instruments, and objects; failed to employ proper surgical techniques; failed to timely and properly observe and monitor CORAL PAIGE during and after the surgical procedures performed on CORAL PAIGE; failed to timely and appropriately follow up on CORAL PAIGE after her surgical procedures were performed; negligently administered improper and inappropriate pre-operative, peri-operative, and post-operative care and treatment; failed to properly supervise the CORAL PAIGE's pre-operative, peri-operative, and post-operative care and treatment; failed to properly and timely observe, perform, order, recommend, and/or prescribe adequate tests to ascertain the CORAL PAIGE's medical condition; failed to timely obtain proper and informed consent for the care and treatment rendered to plaintiff CORAL PAIGE; failed to timely and properly communicate and coordinate with the Plaintiff's medical providers regarding the signs, symptoms, conditions, and complaints of the Plaintiff and with regards to the care and treatment being rendered to the Plaintiff; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to

CORAL PAIGE; and in being negligent and careless and deviating from accepted standards of medical care and treatment in their care and treatment of plaintiff CORAL PAIGE in numerous other ways.

287.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant PATEL, and/or his agents, servants, employees, and/or contractors, and through those he supervised, directed, and ordered, were negligent, breached their duty, negligently and carelessly failed to exercise the degree of care and skill required of them, departed from accepted standards of care and treatment, and committed medical malpractice in the care and treatment of plaintiff CORAL PAIGE in numerous ways, including, that they, among other things: failed to timely provide appropriate medical, surgical, and cardiology care and treatment to plaintiff CORAL PAIGE; negligently left a foreign object within CORAL PAIGE; negligently left a piece of gauze in CORAL PAIGE; failed to timely and properly perform, conduct, recommend, and order a count of instruments, equipment, surgical items, gauze pads, and other items during CORAL PAIGE's surgeries to ensure that no foreign objects, including, but not limited to, gauze pads were left behind in CORAL PAIGE; negligently caused and allowed CORAL PAIGE to develop infections; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; failed to timely and properly diagnose, discover, and recognize the foreign objects in CORAL PAIGE; failed to timely and properly take into account, act on, remove, and treat the foreign objects in CORAL PAIGE; failed to timely and properly discover, diagnose, recognize, take into account, act on, remove, and treat the foreign objects in CORAL PAIGE prior to completing CORAL PAIGE's surgeries and sending her to the PACU, SICU, and/or recovery room; failed to timely and properly perform, conduct, recommend, and order proper surgical counts of instruments,

equipment, surgical items, gauze pads, and other items used during CORAL PAIGE's surgeries; failed to timely and properly order, perform, conduct, recommend, and/or refer CORAL PAIGE for appropriate imaging tests; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and/or other appropriate diagnostic and imaging tests; failed to timely and properly use, take into account, and act on the results of CORAL PAIGE's MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and other imaging and diagnostic tests; failed to timely and properly order, perform, conduct, recommend, obtain, and/or refer appropriate consultations; failed to timely and properly order, perform, conduct, recommend, obtain, and/or refer appropriate consultations from qualified surgeons, cardiothoracic surgeons, infectious disease doctors, plastic surgeons, cardiologists, and/or other experts and specialists; failed to timely and properly order, perform, conduct, prescribe, recommend, and/or refer appropriate antibiotics; failed to timely and properly order, perform, conduct, prescribe, recommend, and/or refer appropriate medications; failed to timely and properly debride CORAL PAIGE's scar tissue; failed to timely and properly diagnose, discover, and recognize CORAL PAIGE's infections; failed to timely and properly take into account, act on, and treat CORAL PAIGE's infections; failed to timely and properly recognize, diagnose, take into account, act on, repair, remediate, and treat CORAL PAIGE's surgical wounds; failed to timely and properly close CORAL PAIGE's surgical wounds; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate laboratory tests and diagnostic tests; failed to timely and properly recognize, take into account, and act on CORAL PAIGE's laboratory tests and diagnostic tests; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly recognize,

take into account, and act on CORAL PAIGE's blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly diagnose, recognize, take into account, treat, and act on the occlusions in CORAL PAIGE's heart and blood vessels; failed to timely and properly perform surgery on CORAL PAIGE; negligently made unnecessary incisions and performed unnecessary and contraindicated procedures; negligently and improperly performed revision surgeries; negligently and improperly performed a pocket revision surgery; negligently and improperly implanted, revised, and re-implanted CORAL PAIGE's pacemakers; negligently and improperly performed pacemaker surgeries on CORAL PAIGE; failed to timely and properly perform, order, recommend, and/or prescribe proper scans to assess CORAL PAIGE's anatomical structure; failed to perform surgeries on CORAL PAIGE within the accepted standards of care; failed to perform the surgeries on CORAL PAIGE carefully and skillfully; failed to properly supervise CORAL PAIGE's surgeries, including failing to properly supervise the nurses, residents, fellows, assistants, and other surgical personnel, including, with regards to checks and counts of equipment, surgical items, instruments, and objects; failed to employ proper surgical techniques; failed to timely and properly observe and monitor CORAL PAIGE during and after the surgical procedures performed on CORAL PAIGE; failed to timely and appropriately follow up on CORAL PAIGE after her surgical procedures were performed; negligently administered improper and inappropriate pre-operative, peri-operative, and post-operative care and treatment; failed to properly supervise the CORAL PAIGE's pre-operative, peri-operative, and post-operative care and treatment; failed to properly and timely observe, perform, order, recommend, and/or prescribe adequate tests to ascertain the CORAL PAIGE's medical condition; failed to timely obtain proper and informed consent for the care and treatment rendered to plaintiff CORAL PAIGE; failed to timely and properly communicate and coordinate

with the Plaintiff's medical providers regarding the signs, symptoms, conditions, and complaints of the Plaintiff and with regards to the care and treatment being rendered to the Plaintiff; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to CORAL PAIGE; and in being negligent and careless and deviating from accepted standards of medical care and treatment in their care and treatment of plaintiff CORAL PAIGE in numerous other ways.

288.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant ARMBRUSTER, and/or her agents, servants, employees, and/or contractors, and through those she supervised, directed, and ordered, were negligent, breached their duty, negligently and carelessly failed to exercise the degree of care and skill required of them, departed from accepted standards of care and treatment, and committed medical malpractice in the care and treatment of plaintiff CORAL PAIGE in numerous ways, including, that they, among other things: failed to timely provide appropriate medical, surgical, and cardiology care and treatment to plaintiff CORAL PAIGE; negligently left a foreign object within CORAL PAIGE; negligently left a piece of gauze in CORAL PAIGE; failed to timely and properly perform, conduct, recommend, and order a count of instruments, equipment, surgical items, gauze pads, and other items during CORAL PAIGE's surgeries to ensure that no foreign objects, including, but not limited to, gauze pads were left behind in CORAL PAIGE; negligently caused and allowed CORAL PAIGE to develop infections; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; failed to timely and properly diagnose, discover, and recognize the foreign objects in CORAL PAIGE; failed to timely and properly take into account, act on, remove, and treat the foreign objects in CORAL PAIGE; failed to timely and properly discover, diagnose, recognize, take into account, act on,

remove, and treat the foreign objects in CORAL PAIGE prior to completing CORAL PAIGE's surgeries and sending her to the PACU, SICU, and/or recovery room; failed to timely and properly perform, conduct, recommend, and order proper surgical counts of instruments, equipment, surgical items, gauze pads, and other items used during CORAL PAIGE's surgeries; failed to timely and properly order, perform, conduct, recommend, and/or refer CORAL PAIGE for appropriate imaging tests; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and/or other appropriate diagnostic and imaging tests; failed to timely and properly use, take into account, and act on the results of CORAL PAIGE's MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and other imaging and diagnostic tests; failed to timely and properly order, perform, conduct, recommend, obtain, and/or refer appropriate consultations; failed to timely and properly order, perform, conduct, recommend, obtain, and/or refer appropriate consultations from qualified surgeons, cardiothoracic surgeons, infectious disease doctors, cardiologists, plastic surgeons, and/or other experts and specialists; failed to timely and properly order, perform, conduct, prescribe, recommend, and/or refer appropriate antibiotics; failed to timely and properly order, perform, conduct, prescribe, recommend, and/or refer appropriate medications; failed to timely and properly debride CORAL PAIGE's scar tissue; failed to timely and properly diagnose, discover, and recognize CORAL PAIGE's infections; failed to timely and properly take into account, act on, and treat CORAL PAIGE's infections; failed to timely and properly recognize, diagnose, take into account, act on, repair, remediate, and treat CORAL PAIGE's surgical wounds; failed to timely and properly close CORAL PAIGE's surgical wounds; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate laboratory tests and diagnostic tests; failed to timely and properly

recognize, take into account, and act on CORAL PAIGE's laboratory tests and diagnostic tests; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly recognize, take into account, and act on CORAL PAIGE's blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly diagnose, recognize, take into account, treat, and act on the occlusions in CORAL PAIGE's heart and blood vessels; failed to timely and properly perform surgery on CORAL PAIGE; negligently made unnecessary incisions and performed unnecessary and contraindicated procedures; negligently and improperly performed revision surgeries; negligently and improperly performed a pocket revision surgery; negligently and improperly implanted, revised, and re-implanted CORAL PAIGE's pacemakers; negligently and improperly performed pacemaker surgeries on CORAL PAIGE; failed to timely and properly perform, order, recommend, and/or prescribe proper scans to assess CORAL PAIGE's anatomical structure; failed to perform surgeries on CORAL PAIGE within the accepted standards of care; failed to perform the surgeries on CORAL PAIGE carefully and skillfully; failed to properly supervise CORAL PAIGE's surgeries, including failing to properly supervise the nurses, residents, fellows, assistants, and other surgical personnel, including, with regards to checks and counts of equipment, surgical items, instruments, and objects; failed to employ proper surgical techniques; failed to timely and properly observe and monitor CORAL PAIGE during and after the surgical procedures performed on CORAL PAIGE; failed to timely and appropriately follow up on CORAL PAIGE after her surgical procedures were performed; negligently administered improper and inappropriate pre-operative, peri-operative, and post-operative care and treatment; failed to properly supervise the CORAL PAIGE's pre-operative, peri-operative, and post-operative care and treatment; failed to properly and timely observe,

perform, order, recommend, and/or prescribe adequate tests to ascertain the CORAL PAIGE's medical condition; failed to timely obtain proper and informed consent for the care and treatment rendered to plaintiff CORAL PAIGE; failed to timely and properly communicate and coordinate with the Plaintiff's medical providers regarding the signs, symptoms, conditions, and complaints of the Plaintiff and with regards to the care and treatment being rendered to the Plaintiff; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to CORAL PAIGE; and in being negligent and careless and deviating from accepted standards of medical care and treatment in their care and treatment of plaintiff CORAL PAIGE in numerous other ways.

289. That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant ABOUJAOUDE, and/or her agents, servants, employees, and/or contractors, and through those she supervised, directed, and ordered, were negligent, breached their duty, negligently and carelessly failed to exercise the degree of care and skill required of them, departed from accepted standards of care and treatment, and committed medical malpractice in the care and treatment of plaintiff CORAL PAIGE in numerous ways, including, that they, among other things: failed to timely provide appropriate medical, surgical, and infectious disease care and treatment to plaintiff CORAL PAIGE; negligently left a foreign object within CORAL PAIGE; negligently left a piece of gauze in CORAL PAIGE; failed to timely and properly perform, conduct, recommend, and order a count of instruments, equipment, surgical items, gauze pads, and other items during CORAL PAIGE's surgeries to ensure that no foreign objects, including, but not limited to, gauze pads were left behind in CORAL PAIGE; negligently caused and allowed CORAL PAIGE to develop infections; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; negligently caused

and allowed CORAL PAIGE to develop infections as a result of a foreign objects; failed to timely and properly diagnose, discover, and recognize the foreign objects in CORAL PAIGE; failed to timely and properly take into account, act on, remove, and treat the foreign objects in CORAL PAIGE; failed to timely and properly discover, diagnose, recognize, take into account, act on, remove, and treat the foreign objects in CORAL PAIGE prior to completing CORAL PAIGE's surgeries and sending her to the PACU, SICU, and/or recovery room; failed to timely and properly perform, conduct, recommend, and order proper surgical counts of instruments, equipment, surgical items, gauze pads, and other items used during CORAL PAIGE's surgeries; failed to timely and properly order, perform, conduct, recommend, and/or refer CORAL PAIGE for appropriate imaging tests; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and/or other appropriate diagnostic and imaging tests; failed to timely and properly use, take into account, and act on the results of CORAL PAIGE's MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and other imaging and diagnostic tests; failed to timely and properly order, perform, conduct, recommend, obtain, and/or refer appropriate consultations; failed to timely and properly order, perform, conduct, recommend, obtain, and/or refer appropriate consultations from qualified surgeons, cardiothoracic surgeons, plastic surgeons, cardiologists, and/or other experts and specialists; failed to timely and properly order, perform, conduct, prescribe, recommend, and/or refer appropriate antibiotics; failed to timely and properly order, perform, conduct, prescribe, recommend, and/or refer appropriate medications; failed to timely and properly debride CORAL PAIGE's scar tissue; failed to timely and properly diagnose, discover, and recognize CORAL PAIGE's infections; failed to timely and properly take into account, act on, and treat CORAL PAIGE's infections; failed to timely and properly

recognize, diagnose, take into account, act on, repair, remediate, and treat CORAL PAIGE's surgical wounds; failed to timely and properly close CORAL PAIGE's surgical wounds; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate laboratory tests and diagnostic tests; failed to timely and properly recognize, take into account, and act on CORAL PAIGE's laboratory tests and diagnostic tests; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly recognize, take into account, and act on CORAL PAIGE's blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly diagnose, recognize, take into account, treat, and act on the occlusions in CORAL PAIGE's heart and blood vessels; failed to timely and properly perform surgery on CORAL PAIGE; negligently made unnecessary incisions and performed unnecessary and contraindicated procedures; negligently and improperly performed revision surgeries; negligently and improperly performed a pocket revision surgery; negligently and improperly implanted, revised, and re-implanted CORAL PAIGE's pacemakers; negligently and improperly performed pacemaker surgeries on CORAL PAIGE; failed to timely and properly perform, order, recommend, and/or prescribe proper scans to assess CORAL PAIGE's anatomical structure; failed to perform surgeries on CORAL PAIGE within the accepted standards of care; failed to perform the surgeries on CORAL PAIGE carefully and skillfully; failed to properly supervise CORAL PAIGE's surgeries, including failing to properly supervise the nurses, residents, fellows, assistants, and other surgical personnel, including, with regards to checks and counts of equipment, surgical items, instruments, and objects; failed to timely and properly observe and monitor CORAL PAIGE during and after the surgical procedures performed on CORAL PAIGE; failed to timely and appropriately follow up on CORAL PAIGE after her surgical procedures

were performed; negligently administered improper and inappropriate pre-operative, peri-operative, and post-operative care and treatment; failed to properly supervise the CORAL PAIGE's pre-operative, peri-operative, and post-operative care and treatment; failed to properly and timely observe, perform, order, recommend, and/or prescribe adequate tests to ascertain the CORAL PAIGE's medical condition; failed to timely obtain proper and informed consent for the care and treatment rendered to plaintiff CORAL PAIGE; failed to timely and properly communicate and coordinate with the Plaintiff's medical providers regarding the signs, symptoms, conditions, and complaints of the Plaintiff and with regards to the care and treatment being rendered to the Plaintiff; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to CORAL PAIGE; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to CORAL PAIGE; and in being negligent and careless and deviating from accepted standards of medical care and treatment in their care and treatment of plaintiff CORAL PAIGE in numerous other ways.

290.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant MANTONI, and/or her agents, servants, employees, and/or contractors, and through those she supervised, directed, and ordered, were negligent, breached their duty, negligently and carelessly failed to exercise the degree of care and skill required of them, departed from accepted standards of care and treatment, and committed medical malpractice in the care and treatment of plaintiff CORAL PAIGE in numerous ways, including, that they, among other things: failed to timely provide appropriate medical, surgical, and nursing care and treatment to plaintiff CORAL PAIGE; negligently left a foreign object within CORAL PAIGE; negligently left a piece of gauze in CORAL PAIGE; failed to timely and properly perform, conduct, recommend, and order a count of instruments, equipment, surgical items,

gauze pads, and other items during CORAL PAIGE's surgeries to ensure that no foreign objects, including, but not limited to, gauze pads were left behind in CORAL PAIGE; negligently caused and allowed CORAL PAIGE to develop infections; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; failed to timely and properly diagnose, discover, and recognize the foreign objects in CORAL PAIGE; failed to timely and properly take into account, act on, remove, and treat the foreign objects in CORAL PAIGE; failed to timely and properly discover, diagnose, recognize, take into account, act on, remove, and treat the foreign objects in CORAL PAIGE prior to completing CORAL PAIGE's surgeries and sending her to the PACU, SICU, and/or recovery room; failed to timely and properly perform, conduct, recommend, and order proper surgical counts of instruments, equipment, surgical items, gauze pads, and other items used during CORAL PAIGE's surgeries; failed to timely and properly recommend CORAL PAIGE for appropriate imaging tests; failed to timely and properly recommend appropriate MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and/or other appropriate diagnostic and imaging tests failed to timely and properly follow the orders and instructions of physicians; failed to timely and properly recommend appropriate consultations; failed to timely and properly administer and recommend appropriate antibiotics; failed to timely and properly administer and recommend appropriate medications; failed to timely and properly diagnose, discover, and recognize CORAL PAIGE's infections; failed to timely and properly take into account, act on, and treat CORAL PAIGE's infections; failed to timely and properly recognize, diagnose, take into account, act on, repair, remediate, and treat CORAL PAIGE's surgical wounds; failed to timely and properly recommend and administer appropriate laboratory tests and diagnostic tests; failed to timely and

properly recommend and administer appropriate blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly perform surgical nursing care on CORAL PAIGE; failed to timely provide appropriate surgical assistance during CORAL PAIGE's surgeries; failed to timely and properly recommend proper scans to assess CORAL PAIGE's anatomical structure; failed to provide surgical assistance and surgical nursing care within the accepted standards of care; failed to provide surgical assistance and surgical nursing care carefully and skillfully; failed to timely and properly observe and monitor CORAL PAIGE during and after the surgical procedures performed on CORAL PAIGE; failed to timely and appropriately follow up on CORAL PAIGE after her surgical procedures were performed; negligently administered improper and inappropriate pre-operative, peri-operative, and post-operative care and treatment; failed to properly and timely recommend adequate tests to ascertain the CORAL PAIGE's medical condition; failed to timely obtain proper and informed consent for the care and treatment rendered to plaintiff CORAL PAIGE; failed to timely and properly communicate and coordinate with the Plaintiff's medical providers regarding the signs, symptoms, conditions, and complaints of the Plaintiff and with regards to the care and treatment being rendered to the Plaintiff; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to CORAL PAIGE; and in being negligent and careless and deviating from accepted standards of medical and nursing care and treatment in their care.

291.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant WILKINS, and/or her agents, servants, employees, and/or contractors, and through those she supervised, directed, and ordered, were negligent, breached their duty, negligently and carelessly failed to exercise the degree of care and skill required of them, departed from accepted standards of care and treatment, and committed medical

malpractice in the care and treatment of plaintiff CORAL PAIGE in numerous ways, including, that they, among other things: failed to timely provide appropriate medical, surgical, and nursing care and treatment to plaintiff CORAL PAIGE; negligently left a foreign object within CORAL PAIGE; negligently left a piece of gauze in CORAL PAIGE; failed to timely and properly perform, conduct, recommend, and order a count of instruments, equipment, surgical items, gauze pads, and other items during CORAL PAIGE's surgeries to ensure that no foreign objects, including, but not limited to, gauze pads were left behind in CORAL PAIGE; negligently caused and allowed CORAL PAIGE to develop infections; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; failed to timely and properly diagnose, discover, and recognize the foreign objects in CORAL PAIGE; failed to timely and properly take into account, act on, remove, and treat the foreign objects in CORAL PAIGE; failed to timely and properly discover, diagnose, recognize, take into account, act on, remove, and treat the foreign objects in CORAL PAIGE prior to completing CORAL PAIGE's surgeries and sending her to the PACU, SICU, and/or recovery room; failed to timely and properly perform, conduct, recommend, and order proper surgical counts of instruments, equipment, surgical items, gauze pads, and other items used during CORAL PAIGE's surgeries; failed to timely and properly recommend CORAL PAIGE for appropriate imaging tests; failed to timely and properly recommend appropriate MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and/or other appropriate diagnostic and imaging tests failed to timely and properly follow the orders and instructions of physicians; failed to timely and properly recommend appropriate consultations; failed to timely and properly administer and recommend appropriate antibiotics; failed to timely and properly administer and recommend appropriate

63

medications; failed to timely and properly diagnose, discover, and recognize CORAL PAIGE's infections; failed to timely and properly take into account, act on, and treat CORAL PAIGE's infections; failed to timely and properly recognize, diagnose, take into account, act on, repair, remediate, and treat CORAL PAIGE's surgical wounds; failed to timely and properly recommend and administer appropriate laboratory tests and diagnostic tests; failed to timely and properly recommend and administer appropriate blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly perform surgical nursing care on CORAL PAIGE; failed to timely provide appropriate surgical assistance during CORAL PAIGE's surgeries; failed to timely and properly recommend proper scans to assess CORAL PAIGE's anatomical structure; failed to provide surgical assistance and surgical nursing care within the accepted standards of care; failed to provide surgical assistance and surgical nursing care carefully and skillfully; failed to timely and properly observe and monitor CORAL PAIGE during and after the surgical procedures performed on CORAL PAIGE; failed to timely and appropriately follow up on CORAL PAIGE after her surgical procedures were performed; negligently administered improper and inappropriate pre-operative, peri-operative, and post-operative care and treatment; failed to properly and timely recommend adequate tests to ascertain the CORAL PAIGE's medical condition; failed to timely obtain proper and informed consent for the care and treatment rendered to plaintiff CORAL PAIGE; failed to timely and properly communicate and coordinate with the Plaintiff's medical providers regarding the signs, symptoms, conditions, and complaints of the Plaintiff and with regards to the care and treatment being rendered to the Plaintiff; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to CORAL PAIGE; and in being negligent and careless and deviating from accepted standards of medical and nursing care and treatment in their care.

292.     That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant PALMER, and/or her agents, servants, employees, and/or contractors, and through those she supervised, directed, and ordered, were negligent, breached their duty, negligently and carelessly failed to exercise the degree of care and skill required of them, departed from accepted standards of care and treatment, and committed medical malpractice in the care and treatment of plaintiff CORAL PAIGE in numerous ways, including, that they, among other things: failed to timely provide appropriate medical, surgical, and nursing care and treatment to plaintiff CORAL PAIGE; negligently left a foreign object within CORAL PAIGE; negligently left a piece of gauze in CORAL PAIGE; failed to timely and properly perform, conduct, recommend, and order a count of instruments, equipment, surgical items, gauze pads, and other items during CORAL PAIGE's surgeries to ensure that no foreign objects, including, but not limited to, gauze pads were left behind in CORAL PAIGE; negligently caused and allowed CORAL PAIGE to develop infections; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; failed to timely and properly diagnose, discover, and recognize the foreign objects in CORAL PAIGE; failed to timely and properly take into account, act on, remove, and treat the foreign objects in CORAL PAIGE; failed to timely and properly discover, diagnose, recognize, take into account, act on, remove, and treat the foreign objects in CORAL PAIGE prior to completing CORAL PAIGE's surgeries and sending her to the PACU, SICU, and/or recovery room; failed to timely and properly perform, conduct, recommend, and order proper surgical counts of instruments, equipment, surgical items, gauze pads, and other items used during CORAL PAIGE's surgeries; failed to timely and properly recommend CORAL PAIGE for appropriate imaging tests; failed to

timely and properly recommend appropriate MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and/or other appropriate diagnostic and imaging tests failed to timely and properly follow the orders and instructions of physicians; failed to timely and properly recommend appropriate consultations; failed to timely and properly administer and recommend appropriate antibiotics; failed to timely and properly administer and recommend appropriate medications; failed to timely and properly diagnose, discover, and recognize CORAL PAIGE's infections; failed to timely and properly take into account, act on, and treat CORAL PAIGE's infections; failed to timely and properly recognize, diagnose, take into account, act on, repair, remediate, and treat CORAL PAIGE's surgical wounds; failed to timely and properly recommend and administer appropriate laboratory tests and diagnostic tests; failed to timely and properly recommend and administer appropriate blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly perform surgical nursing care on CORAL PAIGE; failed to timely provide appropriate surgical assistance during CORAL PAIGE's surgeries; failed to timely and properly recommend proper scans to assess CORAL PAIGE's anatomical structure; failed to provide surgical assistance and surgical nursing care within the accepted standards of care; failed to provide surgical assistance and surgical nursing care carefully and skillfully; failed to timely and properly observe and monitor CORAL PAIGE during and after the surgical procedures performed on CORAL PAIGE; failed to timely and appropriately follow up on CORAL PAIGE after her surgical procedures were performed; negligently administered improper and inappropriate pre-operative, peri-operative, and post-operative care and treatment; failed to properly and timely recommend adequate tests to ascertain the CORAL PAIGE's medical condition; failed to timely obtain proper and informed consent for the care and treatment rendered to plaintiff CORAL PAIGE; failed to timely and properly communicate and coordinate

with the Plaintiff's medical providers regarding the signs, symptoms, conditions, and complaints of the Plaintiff and with regards to the care and treatment being rendered to the Plaintiff; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to CORAL PAIGE; and in being negligent and careless and deviating from accepted standards of medical and nursing care and treatment in their care.

293.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant MACQUEEN, and/or her agents, servants, employees, and/or contractors, and through those she supervised, directed, and ordered, were negligent, breached their duty, negligently and carelessly failed to exercise the degree of care and skill required of them, departed from accepted standards of care and treatment, and committed medical malpractice in the care and treatment of plaintiff CORAL PAIGE in numerous ways, including, that they, among other things: failed to timely provide appropriate medical, surgical, and nursing care and treatment to plaintiff CORAL PAIGE; negligently left a foreign object within CORAL PAIGE; negligently left a piece of gauze in CORAL PAIGE; failed to timely and properly perform, conduct, recommend, and order a count of instruments, equipment, surgical items, gauze pads, and other items during CORAL PAIGE's surgeries to ensure that no foreign objects, including, but not limited to, gauze pads were left behind in CORAL PAIGE; negligently caused and allowed CORAL PAIGE to develop infections; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; failed to timely and properly diagnose, discover, and recognize the foreign objects in CORAL PAIGE; failed to timely and properly take into account, act on, remove, and treat the foreign objects in CORAL PAIGE; failed to timely and properly discover, diagnose, recognize, take into account, act on,

remove, and treat the foreign objects in CORAL PAIGE prior to completing CORAL PAIGE's surgeries and sending her to the PACU, SICU, and/or recovery room; failed to timely and properly perform, conduct, recommend, and order proper surgical counts of instruments, equipment, surgical items, gauze pads, and other items used during CORAL PAIGE's surgeries; failed to timely and properly recommend CORAL PAIGE for appropriate imaging tests; failed to timely and properly recommend appropriate MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and/or other appropriate diagnostic and imaging tests failed to timely and properly follow the orders and instructions of physicians; failed to timely and properly recommend appropriate consultations; failed to timely and properly administer and recommend appropriate antibiotics; failed to timely and properly administer and recommend appropriate medications; failed to timely and properly diagnose, discover, and recognize CORAL PAIGE's infections; failed to timely and properly take into account, act on, and treat CORAL PAIGE's infections; failed to timely and properly recognize, diagnose, take into account, act on, repair, remediate, and treat CORAL PAIGE's surgical wounds; failed to timely and properly recommend and administer appropriate laboratory tests and diagnostic tests; failed to timely and properly recommend and administer appropriate blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly perform surgical nursing care on CORAL PAIGE; failed to timely provide appropriate surgical assistance during CORAL PAIGE's surgeries; failed to timely and properly recommend proper scans to assess CORAL PAIGE's anatomical structure; failed to provide surgical assistance and surgical nursing care within the accepted standards of care; failed to provide surgical assistance and surgical nursing care carefully and skillfully; failed to timely and properly observe and monitor CORAL PAIGE during and after the surgical procedures performed on CORAL PAIGE; failed to timely and appropriately follow up

on CORAL PAIGE after her surgical procedures were performed; negligently administered improper and inappropriate pre-operative, peri-operative, and post-operative care and treatment; failed to properly and timely recommend adequate tests to ascertain the CORAL PAIGE's medical condition; failed to timely obtain proper and informed consent for the care and treatment rendered to plaintiff CORAL PAIGE; failed to timely and properly communicate and coordinate with the Plaintiff's medical providers regarding the signs, symptoms, conditions, and complaints of the Plaintiff and with regards to the care and treatment being rendered to the Plaintiff; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to CORAL PAIGE; and in being negligent and careless and deviating from accepted standards of medical and nursing care and treatment in their care.

294.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant FRANCO, and/or her agents, servants, employees, and/or i contractors, and through those she supervised, directed, and ordered, were negligent, breached their duty, negligently and carelessly failed to exercise the degree of care and skill required of them, departed from accepted standards of care and treatment, and committed medical malpractice in the care and treatment of plaintiff CORAL PAIGE in numerous ways, including, that they, among other things: failed to timely provide appropriate medical, surgical, and nursing care and treatment to plaintiff CORAL PAIGE; negligently left a foreign object within CORAL PAIGE; negligently left a piece of gauze in CORAL PAIGE; failed to timely and properly perform, conduct, recommend, and order a count of instruments, equipment, surgical items, gauze pads, and other items during CORAL PAIGE's surgeries to ensure that no foreign objects, including, but not limited to, gauze pads were left behind in CORAL PAIGE; negligently caused and allowed CORAL PAIGE to develop infections; negligently caused and allowed CORAL

PAIGE to develop infections as a result of a foreign objects; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; failed to timely and properly diagnose, discover, and recognize the foreign objects in CORAL PAIGE; failed to timely and properly take into account, act on, remove, and treat the foreign objects in CORAL PAIGE; failed to timely and properly discover, diagnose, recognize, take into account, act on, remove, and treat the foreign objects in CORAL PAIGE prior to completing CORAL PAIGE's surgeries and sending her to the PACU, SICU, and/or recovery room; failed to timely and properly perform, conduct, recommend, and order proper surgical counts of instruments, equipment, surgical items, gauze pads, and other items used during CORAL PAIGE's surgeries; failed to timely and properly recommend CORAL PAIGE for appropriate imaging tests; failed to timely and properly recommend appropriate MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and/or other appropriate diagnostic and imaging tests failed to timely and properly follow the orders and instructions of physicians; failed to timely and properly recommend appropriate consultations; failed to timely and properly administer and recommend appropriate antibiotics; failed to timely and properly administer and recommend appropriate medications; failed to timely and properly diagnose, discover, and recognize CORAL PAIGE's infections; failed to timely and properly take into account, act on, and treat CORAL PAIGE's infections; failed to timely and properly recognize, diagnose, take into account, act on, repair, remediate, and treat CORAL PAIGE's surgical wounds; failed to timely and properly recommend and administer appropriate laboratory tests and diagnostic tests; failed to timely and properly recommend and administer appropriate blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly perform surgical nursing care on CORAL PAIGE; failed to timely provide appropriate surgical assistance during CORAL PAIGE's surgeries; failed

to timely and properly recommend proper scans to assess CORAL PAIGE's anatomical structure; failed to provide surgical assistance and surgical nursing care within the accepted standards of care; failed to provide surgical assistance and surgical nursing care carefully and skillfully; failed to timely and properly observe and monitor CORAL PAIGE during and after the surgical procedures performed on CORAL PAIGE; failed to timely and appropriately follow up on CORAL PAIGE after her surgical procedures were performed; negligently administered improper and inappropriate pre-operative, peri-operative, and post-operative care and treatment; failed to properly and timely recommend adequate tests to ascertain the CORAL PAIGE's medical condition; failed to timely obtain proper and informed consent for the care and treatment rendered to plaintiff CORAL PAIGE; failed to timely and properly communicate and coordinate with the Plaintiff's medical providers regarding the signs, symptoms, conditions, and complaints of the Plaintiff and with regards to the care and treatment being rendered to the Plaintiff; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to CORAL PAIGE; and in being negligent and careless and deviating from accepted standards of medical and nursing care and treatment in their care.

295.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant ROSE, and/or her agents, servants, employees, and/or contractors, and through those she supervised, directed, and ordered, were negligent, breached their duty, negligently and carelessly failed to exercise the degree of care and skill required of them, departed from accepted standards of care and treatment, and committed medical malpractice in the care and treatment of plaintiff CORAL PAIGE in numerous ways, including, that they, among other things: failed to timely provide appropriate medical, surgical, and nursing care and treatment to plaintiff CORAL PAIGE; negligently left a foreign object within CORAL

PAIGE; negligently left a piece of gauze in CORAL PAIGE; failed to timely and properly perform, conduct, recommend, and order a count of instruments, equipment, surgical items, gauze pads, and other items during CORAL PAIGE's surgeries to ensure that no foreign objects, including, but not limited to, gauze pads were left behind in CORAL PAIGE; negligently caused and allowed CORAL PAIGE to develop infections; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; failed to timely and properly diagnose, discover, and recognize the foreign objects in CORAL PAIGE; failed to timely and properly take into account, act on, remove, and treat the foreign objects in CORAL PAIGE; failed to timely and properly discover, diagnose, recognize, take into account, act on, remove, and treat the foreign objects in CORAL PAIGE prior to completing CORAL PAIGE's surgeries and sending her to the PACU, SICU, and/or recovery room; failed to timely and properly perform, conduct, recommend, and order proper surgical counts of instruments, equipment, surgical items, gauze pads, and other items used during CORAL PAIGE's surgeries; failed to timely and properly recommend CORAL PAIGE for appropriate imaging tests; failed to timely and properly recommend appropriate MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and/or other appropriate diagnostic and imaging tests failed to timely and properly follow the orders and instructions of physicians; failed to timely and properly recommend appropriate consultations; failed to timely and properly administer and recommend appropriate antibiotics; failed to timely and properly administer and recommend appropriate medications; failed to timely and properly diagnose, discover, and recognize CORAL PAIGE's infections; failed to timely and properly take into account, act on, and treat CORAL PAIGE's infections; failed to timely and properly recognize, diagnose, take into account, act on, repair,

remediate, and treat CORAL PAIGE's surgical wounds; failed to timely and properly recommend and administer appropriate laboratory tests and diagnostic tests; failed to timely and properly recommend and administer appropriate blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly perform surgical nursing care on CORAL PAIGE; failed to timely provide appropriate surgical assistance during CORAL PAIGE's surgeries; failed to timely and properly recommend proper scans to assess CORAL PAIGE's anatomical structure; failed to provide surgical assistance and surgical nursing care within the accepted standards of care; failed to provide surgical assistance and surgical nursing care carefully and skillfully; failed to timely and properly observe and monitor CORAL PAIGE during and after the surgical procedures performed on CORAL PAIGE; failed to timely and appropriately follow up on CORAL PAIGE after her surgical procedures were performed; negligently administered improper and inappropriate pre-operative, peri-operative, and post-operative care and treatment; failed to properly and timely recommend adequate tests to ascertain the CORAL PAIGE's medical condition; failed to timely obtain proper and informed consent for the care and treatment rendered to plaintiff CORAL PAIGE; failed to timely and properly communicate and coordinate with the Plaintiff's medical providers regarding the signs, symptoms, conditions, and complaints of the Plaintiff and with regards to the care and treatment being rendered to the Plaintiff; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to CORAL PAIGE; and in being negligent and careless and deviating from accepted standards of medical and nursing care and treatment in their care.

296.    That from on or about February 2, 2012, through on or about May 2012 and prior and subsequent thereto, defendant DEBORAH HEART AND LUNG CENTER, and/or its agents, servants, employees, and/or contractors, and through those it supervised, directed, and

ordered, were negligent, breached their duty, negligently and carelessly failed to exercise the degree of care and skill required of them, departed from accepted standards of care and treatment, and committed medical malpractice in the care and treatment of plaintiff CORAL PAIGE in numerous ways, including, that they, among other things: failed to timely provide appropriate medical, surgical, and cardiology care and treatment to plaintiff CORAL PAIGE; negligently left a foreign object within CORAL PAIGE; negligently left a piece of gauze in CORAL PAIGE; failed to timely and properly perform, conduct, recommend, and order a count of instruments, equipment, surgical items, gauze pads, and other items during CORAL PAIGE's surgeries to ensure that no foreign objects, including, but not limited to, gauze pads were left behind in CORAL PAIGE; negligently caused and allowed CORAL PAIGE to develop infections; negligently caused and allowed CORAL PAIGE to develop infections as a result of a foreign objects; failed to timely and properly diagnose, discover, and recognize the foreign objects in CORAL PAIGE; failed to timely and properly take into account, act on, remove, and treat the foreign objects in CORAL PAIGE; failed to timely and properly discover, diagnose, recognize, take into account, act on, remove, and treat the foreign objects in CORAL PAIGE prior to completing CORAL PAIGE's surgeries and sending her to the PACU, SICU, and/or recovery room; failed to timely and properly perform, conduct, recommend, and order proper surgical counts o of instruments, equipment, surgical items, gauze pads, and other items used during CORAL PAIGE's surgeries; failed to timely and properly order, perform, conduct, recommend, and/or refer CORAL PAIGE for appropriate imaging tests; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and/or other appropriate diagnostic and imaging tests; failed to timely and properly use, take into account, and act on the results of CORAL

PAIGE's MRIs, CAT Scans, X-rays, ultrasounds, sonograms, echocardiograms, and other imaging and diagnostic tests; failed to timely and properly order, perform, conduct, recommend, obtain, and/or refer appropriate consultations; failed to timely and properly order, perform, conduct, recommend, obtain, and/or refer appropriate consultations from qualified surgeons, cardiothoracic surgeons, infectious disease doctors, cardiologists, plastic surgeons, and/or other experts and specialists; failed to timely and properly order, perform, conduct, prescribe, recommend, and/or refer appropriate antibiotics; failed to timely and properly order, perform, conduct, prescribe, recommend, and/or refer appropriate medications; failed to timely and properly debride CORAL PAIGE's scar tissue; failed to timely and properly diagnose, discover, and recognize CORAL PAIGE's infections; failed to timely and properly take into account, act on, and treat CORAL PAIGE's infections; failed to timely and properly recognize, diagnose, take into account, act on, repair, remediate, and treat CORAL PAIGE's surgical wounds; failed to timely and properly close CORAL PAIGE's surgical wounds; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate laboratory tests and diagnostic tests; failed to timely and properly recognize, take into account, and act on CORAL PAIGE's laboratory tests and diagnostic tests; failed to timely and properly order, perform, conduct, recommend, and/or refer appropriate blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly recognize, take into account, and act on CORAL PAIGE's blood tests, CBCs, wounds cultures, and other diagnostic tests; failed to timely and properly diagnose, recognize, take into account, treat, and act on the occlusions in CORAL PAIGE's heart and blood vessels; failed to timely and properly perform surgery on CORAL PAIGE; negligently made unnecessary incisions and performed unnecessary and contraindicated procedures; negligently and improperly performed revision surgeries; negligently and improperly performed

a pocket revision surgery; negligently and improperly implanted, revised, and re-implanted CORAL PAIGE's pacemakers; negligently and improperly performed pacemaker surgeries on CORAL PAIGE; failed to timely and properly perform, order, recommend, and/or prescribe proper scans to assess CORAL PAIGE's anatomical structure; failed to perform surgeries on CORAL PAIGE within the accepted standards of care; failed to perform the surgeries on CORAL PAIGE carefully and skillfully; failed to properly supervise CORAL PAIGE's surgeries, including failing to properly supervise the nurses, residents, fellows, assistants, and other surgical personnel, including with regards to checks and counts of equipment, surgical items, instruments, and objects; failed to employ proper surgical techniques; failed to timely and properly observe and monitor CORAL PAIGE during and after the surgical procedures performed on CORAL PAIGE; failed to timely and appropriately follow up on CORAL PAIGE after her surgical procedures were performed; negligently administered improper and inappropriate pre-operative, peri-operative, and post-operative care and treatment; failed to properly supervise the CORAL PAIGE's pre-operative, peri-operative, and post-operative care and treatment; failed to properly and timely observe, perform, order, recommend, and/or prescribe adequate tests to ascertain the CORAL PAIGE's medical condition; failed to timely and properly follow the orders and instructions of physicians; failed to provide surgical assistance and surgical nursing care within the accepted standards of care; failed to provide surgical assistance and surgical nursing care carefully and skillfully; failed to timely and properly perform surgical nursing care on CORAL PAIGE; failed to timely provide appropriate surgical assistance during CORAL PAIGE's surgeries; failed to timely obtain proper and informed consent for the care and treatment rendered to plaintiff CORAL PAIGE; failed to timely and properly communicate and coordinate with the Plaintiff's medical providers regarding

the signs, symptoms, conditions, and complaints of the Plaintiff and with regards to the care and treatment being rendered to the Plaintiff; failed to timely and properly examine, treat, come to the bedside of, and administer care and treatment to CORAL PAIGE; and in being negligent and careless and deviating from accepted standards of medical care and treatment in their care and treatment of plaintiff CORAL PAIGE in numerous other ways.

297.    That by reason of, as a direct result of, and as a proximate cause of the aforesaid negligence and medical malpractice of the defendants, plaintiff CORAL PAIGE was caused to suffer from permanent, severe, disabling, unnecessary, and avoidable injuries and conscious pain and suffering including, but not limited to, the following: multiple surgeries, multiple revision surgeries, infections, wound dehiscence, MRSA and Staph infections, disfigurement, blistering, drainage, pocket revision surgery, fevers, chills, palpitations, need for pacemaker reprogramming, abdominal incision drainage, abscesses, abscesses of the right breast, left breast, chest, and other areas, debridement of wounds, vegetation, plastic surgery, removal of abdominal muscles, PICC lines, central lines, permanent scars, deformities, and disfigurements, right anterior thoracotomy with chest wall debridement, excision of external pacemaker wires, and evacuation of a foreign body, scar tissue, need for removal, re-insertion, and re-installation of pacemaker, numerous surgical wounds, open and unclosing surgical wounds, weakness, declines and deficits in strength, flexibility, endurance, and energy, great pain, agony, injury, pain and suffering, the need for further medical treatment, hospitalization and surgery, medical bills and other pecuniary and financial losses, mental anguish and emotional distress, significant decreases and limitations in activities of daily living, physical functioning, and quality of life, future limitations in ability to perform daily tasks, and numerous other injuries.

298.    That the negligence, medical malpractice, and departures from accepted standards of care and treatment alleged herein is a proximate cause of, direct cause of, and causally related to the injuries, conditions, and damages for which recovery is sought.

299.    That plaintiff CORAL PAIGE's injuries and damages were caused solely and wholly by, proximately caused by, and causally related to the negligence, medical malpractice, and departures from accepted standards of care and treatment of the defendants and/or their agents, employees, servants, and/or contractors and were in no way contributed to by plaintiff CORAL PAIGE.

300.    That by reason of the aforesaid negligence, medical malpractice, and departures from accepted standards of care and treatment of the Defendants, plaintiff CORAL PAIGE was caused and will be required to undergo medical care and treatment for the rest of her life and the costs and expenses of much medical care and treatment.

301.    That defendants CORBISIERO, PATEL, ARMBRUSTER, ABOUJAOUDE, MANTONI, WILKINS, PALMER, MACQUEEN, MENGEL, FRANCO, ROSE, and DEBORAH HEART AND LUNG CENTER are jointly and severally liable for all of Plaintiffs' damages.

302.    That defendants CORBISIERO, PATEL, ARMBRUSTER, ABOUJAOUDE, MANTONI, WILKINS, PALMER, MACQUEEN, MENGEL, FRANCO, ROSE, and DEBORAH HEART AND LUNG CENTER are jointly and severally liable for all of Plaintiff's damages by reason of the fact that Defendants owed Plaintiff a non-delegable duty of care, that said Defendants are vicariously liable for the negligent acts and omissions of their servants, agents, affiliated physicians, surgeons, nurses, employees, and contractors, and/or that Defendants acted with reckless disregard for the safety of others.

## AS AND FOR THE SECOND COUNT OF
## LACK OF INFORMED CONSENT

303.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 302 inclusive with the same force and affect as though fully stated and set forth at length herein.

304.   Defendants   CORBISIERO,   PATEL,   ARMBRUSTER,   ABOUJAOUDE, MANTONI, WILKINS, PALMER, MACQUEEN, MENGEL, FRANCO, ROSE, DEBORAH HEART AND LUNG CENTER, and/or their agents, servants, employees, and contractors failed to inform plaintiff CORAL PAIGE, her family members, and/or her representatives of the risks, hazards, and alternatives to the treatment proposed and rendered, in consequence of which the Defendants failed to obtain informed consent thereto.

305.   A reasonably prudent person in the position of Plaintiffs would not have undergone the diagnosis, treatment and care rendered herein had they been fully informed.

306.   Defendants   CORBISIERO,   PATEL,   ARMBRUSTER,   ABOUJAOUDE, MANTONI, WILKINS, PALMER, MACQUEEN, MENGEL, FRANCO, ROSE, DEBORAH HEART AND LUNG CENTER, and/or their agents, servants, employees, and contractors failed to comply with and violated Title 26 of the New Jersey Statute Annotated §2H-12.8.

307.   The aforesaid lack of informed consent alleged herein is a proximate cause of and causally related to the injuries, conditions, and damages for which recovery is sought.

308.   That by reason of, as a direct result of, and as a proximate cause of the aforesaid lack of informed consent, plaintiff CORAL PAIGE was caused to suffer from permanent, severe, disabling, unnecessary, and avoidable injuries and conscious pain and suffering including, but not limited to, the following: multiple surgeries, multiple revision surgeries, infections, wound dehiscence, MRSA and Staph infections, disfigurement, blistering, drainage, pocket revision

surgery, fevers, chills, palpitations, need for pacemaker reprogramming, abdominal incision drainage, abscesses, abscesses of the right breast, left breast, chest, and other areas, debridement of wounds, vegetation, plastic surgery, removal of abdominal muscles, PICC lines, central lines, permanent scars, deformities, and disfigurements, right anterior thoracotomy with chest wall debridement, excision of external pacemaker wires, and evacuation of a foreign body, scar tissue, need for removal, re-insertion, and re-installation of pacemaker, numerous surgical wounds, open and unclosing surgical wounds, weakness, declines and deficits in strength, flexibility, endurance, and energy, great pain, agony, injury, pain and suffering, the need for further medical treatment, hospitalization and surgery, medical bills and other pecuniary and financial losses, mental anguish and emotional distress, significant decreases and limitations in activities of daily living, physical functioning, and quality of life, future limitations in ability to perform daily tasks, and numerous other injuries.

309. That defendants CORBISIERO, PATEL, ARMBRUSTER, ABOUJAOUDE, MANTONI, WILKINS, PALMER, MACQUEEN, MENGEL, FRANCO, ROSE, and DEBORAH HEART AND LUNG CENTER are jointly and severally liable for all of Plaintiffs' damages.

310. That defendants CORBISIERO, PATEL, ARMBRUSTER, ABOUJAOUDE, MANTONI, WILKINS, PALMER, MACQUEEN, MENGEL, FRANCO, ROSE, and DEBORAH HEART AND LUNG CENTER are jointly and severally liable for all of Plaintiff's damages by reason of the fact that Defendants owed Plaintiff a non-delegable duty of care, that said Defendants are vicariously liable for the negligent acts and omissions of their servants, agents, affiliated physicians, surgeons, nurses, employees, and contractors, and/or that Defendants acted with reckless disregard for the safety of others.

## AS AND FOR THE THIRD COUNT OF
## NEGLIGENT HIRING/RETENTION

311.   Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 310 inclusive with the same force and affect as though fully stated and set forth at length herein.

312.   Defendant DEBORAH HEART AND LUNG CENTER, and/or its agents, servants, employees, and/or contractors were negligent in hiring, supervising, granting privileges to, renewing privileges for, and retaining medical personnel who were careless, unskillful, negligent, and who did not possess the requisite knowledge and skill of medical professionals in the community.

313.   Defendants CORBISIERO, PATEL, ARMBRUSTER, ABOUJAOUDE, MANTONI, WILKINS, PALMER, MACQUEEN, MENGEL, ROSE, FRANCO, and/or their agents, servants, employees, and/or contractors were negligent in hiring, supervising, granting privileges to, renewing privileges for, and retaining medical personnel who were careless, unskillful, negligent, and who did not possess the requisite knowledge and skill of medical professionals in the community.

314.   The aforesaid negligent hiring, supervision, and retention alleged herein is a proximate cause of the injuries, conditions, and damages for which recovery is sought.

315.   That by reason of, as a directly result of, and as a proximate result of the aforesaid negligent hiring, supervising, granting of privileges, renewing of privileges, and retention, plaintiff CORAL PAIGE was caused to suffer from permanent, severe, disabling, unnecessary, and avoidable injuries and conscious pain and suffering including, but not limited to, the following: multiple surgeries, multiple revision surgeries, infections, wound dehiscence, MRSA and Staph infections, disfigurement, blistering, drainage, pocket revision surgery, fevers, chills,

palpitations, need for pacemaker reprogramming, abdominal incision drainage, abscesses, abscesses of the right breast, left breast, chest, and other areas, debridement of wounds, vegetation, plastic surgery, removal of abdominal muscles, PICC lines, central lines, permanent scars, deformities, and disfigurements, right anterior thoracotomy with chest wall debridement, excision of external pacemaker wires, and evacuation of a foreign body, scar tissue, need for removal, re-insertion, and re-installation of pacemaker, numerous surgical wounds, open and unclosing surgical wounds, weakness, declines and deficits in strength, flexibility, endurance, and energy, great pain, agony, injury, pain and suffering, the need for further medical treatment, hospitalization and surgery, medical bills and other pecuniary and financial losses, mental anguish and emotional distress, significant decreases and limitations in activities of daily living, physical functioning, and quality of life, future limitations in ability to perform daily tasks, and numerous other injuries.

316.    That defendants CORBISIERO, PATEL, ARMBRUSTER, ABOUJAOUDE, MANTONI, WILKINS, PALMER, MACQUEEN, MENGEL, FRANCO, ROSE, and DEBORAH HEART AND LUNG CENTER are jointly and severally liable for all of Plaintiffs' damages.

317.    That defendants CORBISIERO, PATEL, ARMBRUSTER, ABOUJAOUDE, MANTONI, WILKINS, PALMER, MACQUEEN, MENGEL, FRANCO, ROSE, and DEBORAH HEART AND LUNG CENTER are jointly and severally liable for all of Plaintiff's damages by reason of the fact that Defendants owed Plaintiff a non-delegable duty of care, that said Defendants are vicariously liable for the negligent acts and omissions of their servants, agents, affiliated physicians, surgeons, nurses, employees, and contractors, and/or that Defendants acted with reckless disregard for the safety of others.

**WHEREFORE,** plaintiff CORAL PAIGE a/k/a CORAL P. DORF demands judgment against the defendants RAFFAELE CORBISIERO, M.D., BHAVIN M. PATEL, D.O., REBECCA A. ARMBRUSTER, D.O., RANIA ABOUJAOUDE, M.D., CAROL MANTONI, R.N., ELIZABETH WILKINS, R.N., AMY PALMER, R.N., BONNI MACQUEEN, MSN, APN-C, DONNA MENGEL, R.N., ROXANA FRANCO, R.N., A/K/A ROXANA SANTIAGO-FRANCO, R.N., DIANE ROSE, R.N., and DEBORAH HEART AND LUNG CENTER, for damages for past and future pain and suffering, emotional distress, special damages, and punitive damages, together with the interest and the costs of this action, and such other relief as is just.

## CERTIFICATION OF NO OTHER ACTION

The undersigned certifies pursuant to R. 4:5-1 that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that no other parties should be joined in the within action.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues that are so triable.

Dated:  May 20, 2014

KIRSCH GARTENBERG HOWARD, LLP
Local Counsel for THE JACOB D. FUCHSBERG LAW
FIRM, LLP, Attorneys for Plaintiff Coral Paige

By  /s Thomas S. Howard
2 University Plaza # 400
Hackensack, NJ 07601
(201) 488-4644
thoward@kghlaw.com

THE JACOB FUCHSBERG LAW FIRM, LLP
Attorneys for Plaintiff Coral Paige

By /s Bradley S. Zimmerman.
500 Fifth Ave., 45th Floor
New York, New York 10110

Tel.: 212.869.3500
Fax: 212.398.1532
b.zimmerman@fuchsberg.com

s:\h\fuchsberg 2900-000\paige complaint.docx